61 P.3d 343 (2002)
STATE of Washington, Appellant,
v.
Sharon K. FREIGANG, Respondent.
No. 25180-9-II.
Court of Appeals of Washington, Division 2.
December 6, 2002.
Publication Ordered January 10, 2003.
*345 Randall Avery Sutton, Kitsap Co. Prosecutor's Office, Port Orchard, WA, for Appellant.
Montell E. Hester, Brett Andrews Purtzer, Tacoma, WA, for Respondent.
QUINN-BRINTNALL, A.C.J.
The State charged Sharon Freigang with second degree assault with a firearm. After a witness to the alleged assault testified at a pre-trial hearing, she made a Knapstad[1] motion to dismiss the charge and the trial judge granted the motion.[2] The State filed an amended information adding an attempted second degree assault with a firearm charge and reasserting the initial assault charge. The court likewise granted Freigang's second Knapstad motion. The State appeals the dismissals. Because the trial court improperly excluded the State's affidavit, and declined to determine the admissibility of evidence that, if admissible, requires denial of the Knapstad motions, we vacate the orders of dismissal and remand.

FACTS
About 6:45 p.m., on April 27, neighbors Freigang and Todd O'Mealy were arguing about O'Mealy's dog running loose when Freigang pepper sprayed O'Mealy. O'Mealy went to the home of another neighbor, George Iuliano, and asked him to report the incident to the police.
Later that evening, Iuliano walked past Freigang's house and saw her outside with a shotgun in her arms. Freigang yelled: "Todd, get the hell out of here or I'm going to shoot you." Clerk's Papers (CP) at 20 (Iuliano's testimony at Knapstad hearing). Freigang apparently mistook Iuliano for O'Mealy. Shortly thereafter, Iuliano told O'Mealy what happened and that Freigang had a shotgun in her hand. O'Mealy called the police.
The State charged Freigang with one count of second degree assault against Iuliano, *346 and one count of fourth degree assault and one count of felony harassment for the pepper spray incident involving O'Mealy. On Freigang's motion, the court severed the counts relating to O'Mealy from the second degree assault involving Iuliano.[3] During the hearing on the motion to sever, Iuliano testified that Freigang did not point the shotgun at him. Based on this testimony, Freigang moved under Knapstad to dismiss the second degree assault charge. Freigang also presented an affidavit from Iuliano that stated:
That on April 27, 1999, I was in the company of Sharon Freigang as I walked her back to her home after I saw her arguing with Todd O'Mealy about his dog running loose in our neighborhood.
Later that evening, as I walked past Mrs. Freigang's home, I saw her outside holding a shotgun in her arms. Although when I first saw her, the gun was faced in my direction, Mrs. Friegang never pointed the shotgun at me, and I was never afraid for my safety because of the gun.
CP at 119-120 (Iuliano Affidavit).
O'Mealy described these same events as follows:
... George Iuliano came back up to me and said that he had been visiting another neighbor and was just walking back, past Ms. Freigang's home, when Ms. Freigang came outside and pointed a shotgun at him. Mr. Iuliano told me that when Ms. Freigang pointed the gun at him, she threatened to kill him, and then began calling Mr. Iuliano, "Todd". It seemed to Mr. Iuliano that Ms. Freigang had mistaken Mr. Iuliano for me, Todd O'Mealy.
George Iuliano said that Ms. Freigang scared him with a shotgun, and he was scared she was going to shoot him because she mistook him for me, Todd O'Mealy. George Iuliano warned me not to walk near Ms. Freigang's house because she was apparently very angry with me, she had a gun, and was talking about how she was going to kill me.
When Mr. Iuliano was explaining what had happened he was upset and very excited, and it appeared that he had been frightened by what had just happened. The 911 operator was called and Mr. Iuliano explained what had just occurred to the sheriff's deputy who came and took a report.
CP at 60 (Declaration of Todd O'Mealy).
On September 9, the State filed a new information again charging Freigang with second degree assault (Count I) and adding an attempted second degree assault (Count II) charge, both based on the incident with Iuliano. Following a hearing on Freigang's second Knapstad motion, the court ruled that the undisputed facts were legally insufficient to support a prima facie case of second degree assault or an attempt of the same and dismissed both counts. The court also ruled that there were no material facts in dispute. The State appeals.
This case presents two issues. Is an affidavit from a non-witness deputy prosecutor (State's affidavit) competent evidence in a Knapstad motion? And, if so, what information in the State's affidavit must the trial court consider before determining whether the evidence is sufficient to establish a prima facie case that defeats a defendant's Knapstad motion?

ANALYSIS
We review these questions of law de novo. State v. Barajas, 88 Wash.App. 387, 389, 960 P.2d 940 (1997), review denied, 134 Wash.2d 1026, 958 P.2d 314 (1998). In Knapstad, 107 Wash.2d at 356, 729 P.2d 48, the Supreme Court adopted a summary judgment procedure for use in criminal cases.[4] The Knapstad court set out the following procedure to avoid a "trial when all the material facts are not genuinely in issue and could not legally support a judgment of guilt." 107 Wash.2d at 356, 729 P.2d 48.
A Washington defendant should initiate the motion by sworn affidavit, alleging *347 there are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt. The affidavit must necessarily contain with specificity all facts and law relied upon in justification of the dismissal. Unless specifically denied, the factual matters alleged in the motion are deemed admitted. The State can defeat the motion by filing an affidavit that specifically denies the material facts alleged in the defendant's affidavit. If material factual allegations in the motion are denied or disputed by the State, denial of the motion to dismiss is mandatory. If the State does not deny the undisputed facts or allege other material facts, the court is required to ascertain in the omnibus hearing whether the facts which the State relies upon, as a matter of law, establish a prima facie case of guilt. If the motion is granted the court must enter a written order setting forth the affidavits and other materials it has considered and its conclusion regarding the insufficiency of the evidence. Since the court is not to rule on factual questions, no findings of fact should be entered. The court has the discretion to order the defendant held in custody or admitted to bail for a reasonable, specified time pending the filing of a new indictment or information. If no new information is filed the defendant would be discharged.
Knapstad, 107 Wash.2d at 356-57, 729 P.2d 48.
The Knapstad procedure resembles a summary judgment motion in civil cases.[5] In both instances, the court does not pass judgment on the facts. Compare Safeco Ins. Co. of Am. v. Butler, 118 Wash.2d 383, 394-95, 823 P.2d 499 (1992) (summary judgment is appropriate only if reasonable persons could reach but one conclusion) with State v. Groom, 133 Wash.2d 679, 684, 947 P.2d 240 (1997) (court is to determine whether the undisputed material facts establish a prima facie case of guilt). Summary judgment is appropriate where reasonable minds could reach but one conclusion from the admissible facts in evidence. Marquis v. City of Spokane, 130 Wash.2d 97, 105, 922 P.2d 43 (1996).
However, there are three differences between the summary judgment procedures created in Knapstad and the civil summary judgment procedures governed by CR 56. First, in a Knapstad motion, the State's affidavit of probable cause and responding affidavit can be made by someone not competent to testify in the trial. See, 107 Wash.2d at 356, 729 P.2d 48. See e.g. Groom, 133 Wash.2d at 693, 947 P.2d 240. Second, when a Knapstad motion is granted, the State may refile the charges because a Knapstad dismissal is without prejudice.[6] And the third difference is that only the State can appeal the granting of the Knapstad motion.[7]
Here, the trial court erred when it refused to consider the State's affidavit because it did not meet the requirement of CR 56(e) that the affiant be competent to testify to the matters stated therein. State v. Knapstad, 107 Wash.2d 346, 356, 729 P.2d 48 (1986), expressly provides that "the State can defeat the motion by filing an affidavit which specifically denies the material facts alleged in the defendant's affidavit." We hold that an affidavit of a non-witness deputy prosecuting attorney is proper competent evidence for the trial court to consider in ruling on a Knapstad motion.
The State asserts that not only is its affidavit competent evidence at the Knapstad motion, but that anything averred therein must be considered as competent evidence by the trial court in making its Knapstad ruling. We do not agree. A trial court's Knapstad decision turns on the State's ability to prove a prima facie case; not on the facts asserted *348 in the State's affidavit, but on only those facts admissible at trial. CR 56(e) (shall set forth such facts as would be admissible in evidence); Marquis, 130 Wash.2d at 105, 922 P.2d 43. The State argues that the statement in O'Mealy's affidavit, "Ms. Freigang scared [Iuliano] with a shotgun, and he was scared she was going to shoot him because she mistook him for me" (CP at 60), creates an issue of material fact. And that because the trial court cannot resolve disputed issues of material fact in reviewing a Knapstad motion, denial of Freigang's Knapstad motion was mandatory.
But the State's argument mistakenly assumes that the prohibition on the trial court's resolving disputed factual issues precludes it from resolving the legal issue of admissibility of the governing evidence. In evaluating a Knapstad motion, a trial court cannot treat hearsay as if it were substantive evidence in making a prima facie case determination. Iuliano's statement to O'Mealy could be evidence establishing a prima facie case but only if it is admissible at trial. CR 56(e).[8] The trial court must first determine whether O'Mealy's testimony about Iuliano's statement is admissible before determining whether, as a matter of law, the State can produce evidence sufficient to establish a prima facie case. ER 104.[9]
If, for example, Iuliano's statements are admissible as excited utterances,[10] they are substantive evidence establishing a prima facie case and the court is required to deny Freigang's Knapstad motion. If, however, Iuliano's statements are not admissible, the court must exclude them from consideration in making a determination of whether the State can present sufficient evidence to support a prima facie case. CR 56(e). The trial court may not weigh the conflicting statements and base its decision on the statement (the report to O'Mealy, 911, and the police, or Iuliano's recanting testimony and affidavit) it finds the most credible. "Since the [trial] court is not to rule on factual questions, no findings of fact should be entered." Knapstad, 107 Wash.2d at 357, 729 P.2d 48.
We hold that the responsive affidavit of a non-witness deputy prosecutor is competent evidence in a Knapstad hearing, but the court may only consider admissible evidence referenced in the affidavit to determine whether the State can present a prima facie case for the crime charged.
Here, the trial court ruled that because the State's affidavit was hearsay, and because the affidavit was not admissible at trial as substantive evidence, the State had failed to present evidence of a prima facie case sufficient to defeat Freigang's motion. But a responsive affidavit is the proper method to present the State's offer of proof to the trial court. Knapstad, 107 Wash.2d at 356, 729 P.2d 48. The trial court erred when it refused to consider the deputy prosecutor's affidavit on grounds that it was a hearsay document. Instead, it was required to accept the affidavit as an offer of proof and evaluate the admissibility of the evidence outlined therein.
The court also erroneously refused to allow the State the opportunity to present O'Mealy's affidavit and testimony that, it claims, would have established that Iuliano's statements to 911, the police, and O'Mealy were excited utterances and substantive evidence sufficient to establish the State's case. If O'Mealy's testimony regarding Iuliano's statements is admissible, a prima facie case of assault is established and denial of Freigang's Knapstad motion is mandatory. Knapstad, *349 107 Wash.2d at 356, 729 P.2d 48 (if material factual allegations in the motion are denied or disputed by the State, denial of the motion to dismiss is mandatory).
We remand to the trial court for a hearing to determine whether Iuliano's statements to O'Mealy, 911, and/or the police are admissible at trial. If they are, the trial court must consider them in determining whether the State can establish a prima facie case. If they are not admissible, the trial court must exclude the statements from consideration in its ruling on the Knapstad motion.[11]See CR 56(e). See State v. Lopez, 93 Wash.App. 619, 622, 970 P.2d 765 (1999) (dismissal of the information is appropriate only if no rational trier of fact could find the elements of the crime beyond a reasonable doubt); State v. Dunn, 82 Wash.App. 122, 126, 916 P.2d 952 (the court looks to the undisputed facts and ascertains whether, as a matter of law, they establish a prima facie showing of guilt), review denied, 130 Wash.2d 1018, 928 P.2d 413 (1996).
I concur: HOUGHTON, J.
*344 MORGAN, J., (concurring).
The State charged Sharon Freigang with second degree assault.[12] It alleged that she had pointed a gun at a neighbor, George Iuliano,[13] while ranting about another neighbor, Todd O'Mealy.
Iuliano testified before trial there had been no assault. He also submitted an affidavit in which he stated, "Mrs. Freigang never pointed the shotgun at me, and I was never afraid for my safety because of the gun."[14]
Freigang moved to dismiss under State v. Knapstad.[15] She argued that the State's evidence was insufficient to support a finding of assault.
The State responded with a police report in which the investigating officer described his interview of Iuliano an hour or two after the incident. According to the officer's report, Iuliano said that Freigang had come out on her porch "with a shotgun and pointed it at him[,]"[16] causing him to be "in fear for his life[.]"[17] As far as the record shows, Iuliano was not excited while speaking to the officer.
The other item of evidence was a declaration in which O'Mealy described a conversation between him and Iuliano on the night of the incident. According to O'Mealy, "Iuliano said that Ms. Freigang scared him with a shotgun, and he was scared she was going to shoot him because she mistook him for me, Todd O'Mealy."[18] As "Iuliano was explaining what had happened he was upset and very excited, and it appeared that he had been frightened by what had just happened."[19]
Confusingly, the trial court held two hearings before two different judges in two different *350 cause numbers.[20] The first judge ruled that Iuliano's statement to the officer was inadmissible hearsay. Neither judge ruled on the admissibility of Iuliano's statement to O'Mealy. Both judges ruled that Freigang's motion should be granted and the second degree assault charge dismissed. The State then filed this appeal.
In a criminal case, a defendant may challenge the sufficiency of the evidence at various stages of the litigation process. As we explained in State v. Jackson:[21]
In a criminal case, a defendant may challenge the sufficiency of the evidence (a) before trial, (b) at the end of the State's case in chief, (c) at the end of all the evidence, (d) after verdict, and (e) on appeal. In each instance, the court takes the evidence and the reasonable inferences therefrom in the light most favorable to the State.
Before trial, a court examines sufficiency based on facts supplied by affidavit. At the end of the State's case in chief, a court examines sufficiency based on the evidence admitted at trial so far. At the end of all the evidence, after verdict, or on appeal, a court examines sufficiency based on all the evidence admitted at trial. Each succeeding basis is more complete, and hence better, than the one before.
Regardless of when a court is asked to examine the sufficiency of the evidence, it will do so using the best factual basis then available. For this reason, a defendant who presents a defense case in chief "waives" (i.e., may not appeal) the denial of a motion to dismiss made at the end of the State's case in chief, and a defendant who goes to trial may not appeal the denial of a Knapstad motion. This does not mean that a defendant is barred from claiming insufficiency at a late stage of the proceedings, merely because he or she failed to do so earlier; it does mean, however, that the claim will be analyzed using the most complete factual basis available at the time the claim is made.[[22]]
State v. Knapstad supplies the pretrial procedure for challenging the sufficiency of evidence. In the words of the Knapstad court itself, it was "clarify[ing] the procedures for pretrial dismissals of criminal charges for insufficiency of evidence to support a conviction."[23]
When a defendant challenges the sufficiency of evidence, the court must first determine admissibility. The reason, of course, is that one must know what the evidence is before one can decide whether the evidence is sufficient to take the case to a jury. When a defendant challenges sufficiency during or after trial, admissibility takes care of itself, for the court will already have ruled on it to the extent it is contested. But when a defendant challenges sufficiency by a pre-trial Knapstad motion, the court will need to determine admissibility to the extent it is contested, then turn to sufficiency.
The trial court in this case properly ruled that Iuliano's hearsay statement to the investigating police officer was not admissible. The statement was hearsay, and nothing in the record even suggests that it might have been within a hearsay exception.
The remaining question, not considered by either judge, was whether Iuliano's hearsay statement to O'Mealy was admissible. The answer was yes if the statement fell within a hearsay exception, but no if it did not.
The exception that might have applied is the one for excited utterances. It provides that a statement shall not be excluded as hearsay, even though the declarant may be available to testify, if the statement "relat[es] *351 to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."[24]
The question usually at the core of this exception is whether the declarant was excited by the event or condition at the time of his or her statement.[25] Whether a particular declarant is excited on a particular occasion is a hearsay-related question of preliminary fact controlled by ER 104(a).[26] Like other hearsay-related questions of preliminary fact, it is decided by the trial judge, who is not bound by the rules of evidence (except those with respect to privileges). Thus, the judge can take the information he or she needs to decide the question from sources such as the oral assertions of counsel, affidavits, or, in the judge's discretion, "the making of an offer in question and answer form."[27] At the end of the ER 104(a) hearing, the judge decides the disputed preliminary question according to a preponderance of the information presented.[28]
Assuming without holding that this court may sometimes decide a question of preliminary fact that the trial court has neglected to consider, it should not do that here. Whether Iuliano was excited when he spoke to
O'Mealy is a question of major importance in this case. In Iuliano's affidavit, he said that "Freigang never pointed the shotgun at me, and I was never afraid for my safety[,]"[29] from which a lack of excitement might be inferred. When Iuliano previously testified in open court, he described speaking with O'Mealy, but he said nothing about being excited.[30] Only O'Mealy has alleged that Iuliano was excited, and it might be inferred that he has a personal interest in seeing Freigang prosecuted. Under these particular circumstances, the tribunal that decides whether Iuliano's statement qualifies as an excited utterance should haveand exercisethe discretion to require both Iuliano and O'Mealy to appear in person at the ER 104(a) hearing, for that is the only way to assess, weigh and balance the credibility of each. The trial court possesses that discretion under ER 103(b), whereas we do not. For the foregoing reasons, but only for the foregoing reasons, I concur with the majority that we should remand to the trial court with directions (a) to conduct an ER 104(a) hearing, (b) decide whether Iuliano's hearsay statement is admissible, and (c) grant or *352 deny Freigang's Knapstad motion accordingly.[31]
NOTES
[1] State v. Knapstad, 107 Wash.2d 346, 729 P.2d 48 (1986).
[2] We note that although the witness later provided an affidavit consistent with his testimony at the pre-trial hearing, Freigang's Knapstad motion was not based on a complaining witness' recanting affidavit. A Knapstad motion, like the State's prima facie case, must be supported by competent evidence. Hearsay, which is admissible for impeachment purposes only, does not create a material issue of disputed fact. Such evidence is insufficient as a matter of law to support or defeat a motion to dismiss brought under Knapstad, 107 Wash.2d at 356, 729 P.2d 48. See Meyer v. Univ. of Washington, 105 Wash.2d 847, 852, 719 P.2d 98 (1986) (after the moving party submits affidavits, the nonmoving party must set forth specific facts which rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact; merely asserting contrary facts in the responding affidavit is insufficient). See also CR 56(e) (after motion for summary judgment, adverse party may not rest on mere allegation or denials).
[3] The State does not appeal this ruling.
[4] Although the court invited consideration of a formal rule, to date none has been forthcoming. See Knapstad, 107 Wash.2d at 352-54, 729 P.2d 48.
[5] "In a sense, this is somewhat similar to summary judgment proceedings in civil cases, but a dismissal under this rule is not a bar to a subsequent prosecution." Knapstad, 107 Wash.2d at 355-56, 729 P.2d 48 (citing COMMITTEE NOTE. FLA. R.CRIM. P. 3.190).
[6] "A dismissal and discharge under this procedure is not a bar to a subsequent prosecution for the same offense based on additional evidence." Knapstad. 107 Wash.2d at 357, 729 P.2d 48.
[7] "A defendant has no right to appeal a denial of the motion to dismiss. RAP 2.2(a). The State has a right of appeal. RAP 2.2(b)." Knapstad, 107 Wash.2d at 357, 729 P.2d 48.
[8] "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." CR 56(e).
[9] "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court...." ER 104(a).
[10] A hearsay statement qualifies as an excited utterance and is admissible a substantive evidence if (1) a startling event or condition occurred, (2) the statement was made while the declarant was under the stress of excitement caused by the event or condition, and (3) the statement relates to the event or condition. ER 803(a)(2); State v. Davis, 141 Wash.2d 798, 843, 10 P.3d 977 (2000).
[11] We note that whether Iuliano was subjectively afraid of Freigang is not a necessary material element of the crime of assault with a deadly weapon. If admissible evidence establishes that Freigang was obviously armed and uttered a threat to kill, that evidence alone is sufficient to support the charge of assault with a deadly weapon. See e.g. State v. Murphy, 7 Wash.App. 505, 511, 500 P.2d 1276 (air pollution control officers confronted by armed landowner yelling threats sufficient to establish second degree assault), review denied, 81 Wash.2d 1008 (1972). "A person is guilty of assault in the second degree if he or she ... (c) [a]ssaults another with a deadly weapon[.]" RCW 9A.36.021(1). Iuliano's lack of actual fear (because he knew she had mistaken him for O'Mealy or because he did not believe she would shoot) does not negate any of the elements of the crime of assault with a deadly weapon and is not material.
[12] The State actually filed this charge twice, under two different cause numbers. It seems to have done that because the trial court ordered severance, even though the more normal procedure would simply have been to hold two trials in the same cause number. Accordingly, I view the two cause numbers as if they were one.
[13] The State also charged two misdemeanors and certain enhancements, but those are not pertinent to this appeal.
[14] Clerk's Papers (CP) at 120.
[15] 107 Wash.2d 346, 729 P.2d 48 (1986).
[16] CP at 5.
[17] CP at 5.
[18] CP at 60.
[19] CP at 60.
[20] The procedure used in this case was confused as well as confusing. One judge severed the second degree assault count from other counts not pertinent here. Instead of scheduling two trials under the same cause number, the State refiled the second degree assault under a new cause number. The result was two Knapstad hearings before two different judges under two different cause numbers. I treat the two hearings as one, which is how they should have been treated in the first instance.
[21] State v. Jackson, 82 Wash.App. 594, 918 P.2d 945 (1996), review denied, 131 Wash.2d 1006, 932 P.2d 644 (1997) (and cases cited therein).
[22] Jackson, 82 Wash.App. at 607-09, 918 P.2d 945 (citations omitted).
[23] 107 Wash.2d at 347, 729 P.2d 48.
[24] ER 803(a)(2).
[25] For a fuller discussion of all the questions inherent in the exception, see State v. Chapin, 118 Wash.2d 681, 826 P.2d 194 (1992).
[26] ER 104(a) provides:

Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of section (b). In making its determination it is not bound by the Rules of Evidence except those with respect to privileges.
ER 104(b) is not pertinent here.
[27] ER 103(b).
[28] Bourjaily v. United States, 483 U.S. 171, 176, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (hearsay-related questions of preliminary fact); United States v. Franco, 874 F.2d 1136, 1139 (7th Cir. 1989) (same); Condon Bros., Inc. v. Simpson Timber Co., 92 Wash.App. 275, 285-89, 966 P.2d 355 (1998) (same). See also State v. Karpenski, 94 Wash.App. 80, 102-04, 971 P.2d 553 (1999) (competency-related questions of preliminary fact); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 n. 10, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Although the statement in the text is true for many preliminary questions of fact, it is not true for all such questions. See Karpenski, 94 Wash.App. at 102, 971 P.2d 553; Condon, 92 Wash.App. at 289 n. 38, 966 P.2d 355.
[29] CP at 120.
[30] When asked whether he had warned O'Mealy about Freigang on the night in question, Iuliano testified, "I told him she had a shotgun in her hand, but I think she was trying to defend herself because she thought it was Todd[.]" Report of Proceedings (RP) at 20. He then went on:

Q: Did you go down to Mr. Todd O'Mealy's house.
A: No, I didn't go to his house.
Q: Did you go down to see him?
A: No, I didn't go down to see him.
Q: Did you see Mr. O'Mealy?
A: Yeah.
Q: Did you warn Mr. O'Mealy about what had happened?
A: I just said she had a shotgun.
Q: Did you advise him he shouldn't go back in that direction?
A: Well, I don't think he did....
RP at 21.
[31] Nothing in this opinion, or in the majority's as I understand it, is intended to imply that an accused can be convicted on hearsay alone under Washington Constitution Article I, section 22 ("accused shall have the right ... to meet the witnesses against him face to face"). As far as I am aware, that question has not been raised or argued since the decision in State v. Foster, 135 Wash.2d 441, 957 P.2d 712 (1998), and I have not considered it here.