IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82116-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| CARMICHAEL, KENNETH LEVI, | ) | |
| DOB: 08/19/1982, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — A jury convicted Kenneth Levi Carmichael of domestic violence (DV) second degree assault and second degree escape. Carmichael appeals, claiming that the trial court erred by refusing to sever the charges. He also asserts his attorney was ineffective for not seeking to redact prejudicial information from exhibits. We conclude the trial court did not err by refusing to sever the assault and escape charges, but his attorney's deficient performance prejudiced Carmichael. We reverse and remand for retrial.

FACTS

On October 18, 2019, Riley Wene met her sister Cassidy Wene for drinks and dinner. After dinner, Riley[1] dropped off Cassidy at the Olin Fields Apartments in Everett so Cassidy could spend time with her boyfriend, Carmichael. Riley then went home and fell asleep.

---

[1] For clarity, we refer to Riley Wene and Cassidy Wene by their first names. We intend no disrespect.

Citations and pin cites are based on the Westlaw online version of the cited material.

In the early morning hours of October 19, Riley awoke to a telephone call from Cassidy. Cassidy was crying and told Riley her tooth was missing because Carmichael hit her. She asked Riley to come pick her up from a gas station near Olin Fields. When Riley arrived about five minutes later, Cassidy was "bloody" and her jaw "looked messed up and dislocated. . . . [I]t looked like her tooth was missing," and "her jaw just was separated." Riley called 911.

Everett Police Officer Daniel Rocha arrived first. He noticed that Cassidy was crying and had blood coming out of her mouth. Cassidy's permanent retainer was dislodged and her teeth appeared slightly shifted. Cassidy had trouble speaking, but she told Officer Rocha that her boyfriend hit her across the face with an open hand. Minutes later, an ambulance arrived and took Cassidy to Providence Regional Medical Center.

At the hospital, emergency room physician Francisco de la Fuente and forensic nurse Melanie Mitchell examined Cassidy. Cassidy told them that Carmichael struck her in the face.

Dr. de la Fuente did a physical exam and noted that Cassidy had a "two-finger trismus," or "spasming of the muscles that move the mandible such that you can't open your mouth," so he could get only "two fingers in between her upper and lower jaws." He also noted Cassidy's jaw was tender to the touch and her permanent orthodontic wire was "partially yanked off of the teeth." Nurse Mitchell observed that Cassidy had a limited range of motion of her mouth, dried blood on her chin, and a loose left canine. Cassidy told Mitchell she had "ten out of ten jaw pain."

2

Dr. de la Fuente ordered a CT[2] scan. After receiving the radiologist's report, Dr. de la Fuente diagnosed Cassidy with a "left mandibular fracture," or a broken jaw.

In December 2019, the State charged Carmichael with DV second degree assault.[3] At his preliminary appearance, the court ordered Carmichael detained pending trial and set a $50,000 bond. Carmichael was unable to post bond.

In March 2020, the court issued a limited temporary release order (TRO) so Carmichael could attend a medical appointment on March 31. The jail released him as ordered at 9:45 a.m. on March 31 and told him to return by 12:30 p.m. But Carmichael did not return. The court issued a bench warrant for Carmichael's arrest the next day.

On May 16, 2020, Snohomish County Sheriff deputies located Carmichael at a house in Everett. When Carmichael walked outside and saw the officers surrounding the house, he ran back inside. The deputies made several loudspeaker announcements instructing Carmichael to surrender, but he refused.

Deputies secured a warrant and entered the home. They eventually found Carmichael hiding in the attic. Two deputies and a K-9 officer entered the attic while Deputy Jonathan Krajcar waited below. Deputy Krajcar heard a scuffle, then Carmichael, one of the deputies, and the K-9 officer fell through the ceiling onto the floor in front of him. Deputy Krajcar stepped into the rubble and arrested

---

[2] Computerized tomography.

[3] The State also alleged Carmichael committed the crime while on community custody and added a rapid recidivism aggravator.

Carmichael. Carmichael told Deputy Krajcar that "he was sorry and that he was worried he was going to go back to jail for a long time."

After the police returned Carmichael to custody, the State amended the information to add a count of second degree escape.[4] At his preliminary appearance on the new charge, the court entered another order of detention and increased Carmichael's bail bond amount to $100,000.

Carmichael moved to sever the assault and escape charges for trial. The court denied Carmichael's motion. Carmichael raised his motion for severance twice more—once during motions in limine and again at the beginning of the third day of trial. The trial court denied each of Carmichael's motions.

Cassidy did not testify at trial. But Riley, Officer Rocha, Dr. de la Fuente, and Mitchell testified. Each described what Cassidy told them about the assault and the injuries they observed as a result.

Deputy Krajcar testified about finding and arresting Carmichael on May 16, 2020, and a jail technician and a manager with the Snohomish County Clerk's Office testified about the TRO. The State offered the two orders of detention showing that Carmichael was held on bond pending trial—"Exhibit 35," the December 2019 order the preliminary appearance judge issued before temporarily releasing Carmichael, and "Exhibit 41," the May 2020 order another judge issued after Carmichael returned to custody. Each exhibit contained the courts' findings that release without conditions would not "reasonably assure [Carmichael]'s presence when required" and that there was a substantial danger

---

[4] The State again alleged Carmichael committed the crime while on community custody.

4

that if released, Carmichael "will commit a violent crime, seek to intimidate witnesses, or otherwise unlawfully interfere with the administration of justice." Each order also prohibited Carmichael from contacting Cassidy. And the orders prohibited Carmichael from accessing, obtaining, or possessing any dangerous weapon, firearm, or concealed pistol license because the charges were "DV." Carmichael objected to Exhibit 35 as irrelevant but did not object to the admission of Exhibit 41. The trial court overruled the objection and admitted both exhibits. Counsel did not seek redaction of either exhibit.

Carmichael presented a general denial defense to the assault charge. He did not testify about the assault. But his defense to the escape charge was "uncontrollable circumstances." Carmichael testified that he did not return to jail as ordered because "I had health issues, and no one in the jail [was] wearing masks or anything because of COVID-19."[5] He claimed he had "breathing issues, stomach issues[,] and hip issues" and used an inhaler. Carmichael explained that when he told Deputy Krajcar he was worried about going back to jail for a long time, he meant that "COVID-19 was going on, and . . . court wasn't going on, so I didn't want to sit in jail for a long time." Carmichael admitted that the jail had not housed him in the medical ward and that he had no paperwork supporting his medical claims.

---

[5] COVID-19 is the World Health Organization's official name for "coronavirus disease 2019," first discovered in December 2019 in Wuhan, China. COVID-19 is a severe, highly contagious respiratory illness that quickly spread throughout the world.

The jury found Carmichael guilty of both charges.[6]  The jury also returned a special verdict, finding that the assault amounted to DV because Carmichael and Cassidy were "members of the same family or household."

The trial court sentenced Carmichael to concurrent standard-range prison sentences of 43 months for second degree assault and 22 months for second degree escape.

Carmichael appeals.

## ANALYSIS

I.  Motion To Sever

Carmichael claims the trial court erred by refusing to sever the assault and escape counts for trial.  We disagree.

We review a trial court's failure to sever criminal charges for a manifest abuse of discretion.  State v. Bythrow, 114 Wn.2d 713, 717, 790 P.2d 154 (1990).  A trial court abuses its discretion when its decision is unreasonable or based on untenable grounds or reasons.  State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

Under CrR 4.3(a)(1), the State may join two or more offenses of similar character in one charging document.  Bythrow, 114 Wn.2d at 717.  We construe the joinder rule expansively to promote Washington's public policy of conserving judicial resources.  State v. Bryant, 89 Wn. App. 857, 867, 950 P.2d 1004 (1998); State v. McDaniel, 155 Wn. App. 829, 860, 230 P.3d 245 (2010) ("Washington

---

[6] Carmichael stipulated that he was on community custody at the time of both offenses as provided by RCW 9.94A.525(19) and waived his right to a jury trial on the rapid recidivism aggravator.  The trial judge later determined the State proved rapid recidivism beyond a reasonable doubt.

6

law disfavors separate trials."). But the court must sever properly joined charges for trial if it " 'determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense.' " Bythrow, 114 Wn.2d at 717 (quoting CrR 4.4(b)).

Defendants seeking severance of charges must show that a trial involving both counts would be so manifestly prejudicial that it outweighs the concern for judicial economy. Bythrow, 114 Wn.2d at 718. In determining whether a trial on both counts would prejudice a defendant, courts consider:

> "(1) [T]he strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial."

State v. Sutherby, 165 Wn.2d 870, 884-85, 204 P.3d 916 (2009) (quoting State v. Russell, 125 Wn.2d 24, 63, 882 P.2d 747 (1994)). On review, we consider only the facts known to the trial judge when the defendant raises the motion to sever rather than the events that develop later at trial.[7] State v. Bluford, 188 Wn.2d 298, 310, 393 P.3d 1219 (2017).

### 1. Strength of the State's Evidence

Carmichael argues that this factor favors severance because the strength of the State's evidence on the assault charge was much weaker than the escape charge. According to Carmichael, evidence of the assault was weak because it consisted of only Cassidy's hearsay statements to Riley and medical providers.

---

[7] A defendant must generally move for severance pretrial and renew a denied pretrial motion for severance before or at the close of all the evidence to preserve a claim on appeal. State v. Bluford, 188 Wn.2d 298, 306, 393 P.3d 1219 (2017); CrR 4.4(a)(2). Carmichael moved for severance pretrial, again as a motion in limine, and on the third day of trial.

But the court admitted Cassidy's statements as exceptions to the hearsay rule.[8] Statements admitted under an exception to the hearsay rule are substantive evidence entitled to their full probative value. State v. Freigang, 115 Wn. App. 496, 504, 61 P.3d 343 (2002); Carraway v. Johnson, 63 Wn.2d 212, 214, 386 P.2d 420 (1963). And Riley's testimony about the events of the night and the testimony of the two medical professionals who saw Cassidy's injuries corroborated Cassidy's statements.

When the State's evidence is strong on each count, there is no danger that the jury will base its finding of guilt as to one count on the strength of the evidence of the other count. Bythrow, 114 Wn.2d at 721-22. Because the evidence was strong on both the assault and evidence charges, this factor weighs against severance.

2. Clarity of Defenses

Carmichael argues his general denial of the assault charge and "uncontrollable circumstances" defense to the escape charge were mutually antagonistic because the latter defense required his testimony, but the former did not. He contends this left the jury "free to act upon negative inferences arising from [his] failure to address" the assault.[9]

---

[8] The court admitted Cassidy's statements to Riley as excited utterances. ER 803(a)(2). The court admitted Cassidy's statements to medical personnel as statements made for the purpose of medical diagnosis or treatment. ER 803(a)(4).

[9] Citing State v. Blair, 117 Wn.2d 479, 485-86, 816 P.2d 718 (1991), Carmichael argues the jury would be entitled to such an inference under the missing witness doctrine. But Carmichael cites no case applying the missing witness doctrine to a criminal defendant's exercise of his constitutional right not to testify. Indeed, existing case law holds to the contrary. See State v. Montgomery, 163 Wn.2d 577, 599, 183 P.3d 267 (2008) (explaining that the missing witness doctrine cannot apply if it would infringe on a criminal defendant's right to silence).

When defenses are mutually antagonistic and the defendant shows that presentation of the defenses would lead to prejudice, this factor weighs in favor of severance. State v. Nguyen, 10 Wn. App. 2d 797, 819, 450 P.3d 630 (2019). Mutually antagonistic defenses will compel separate trials only if the defendant shows "the conflict is so prejudicial that defenses are irreconcilable." State v. Hoffman, 116 Wn.2d 51, 74, 804 P.2d 577 (1991). Defenses are irreconcilable if they are mutually exclusive so that the fact finder must believe one defense if the other defense is disbelieved. State v. Johnson, 147 Wn. App. 276, 285, 194 P.3d 1009 (2008).

To prevail on his "uncontrollable circumstances"[10] defense to the escape charge, Carmichael had to show (1) uncontrollable circumstances prevented him from returning to custody, (2) he did not contribute to the creation of the circumstances in reckless disregard[11] of the requirement to return, and (3) he returned to custody as soon as the circumstances ceased to exist. Former RCW 9A.76.170(2) (2001). Nothing about this defense is irreconcilable with Carmichael's general denial of the assault charge. And the trial court took care to mitigate any risk of the jury using the fact that Carmichael testified in support

---

[10] RCW 9A.76.010(4) provides:

"Uncontrollable circumstances" means an act of nature such as a flood, earthquake, or fire, or a medical condition that requires immediate hospitalization or treatment, or an act of a human being such as an automobile accident or threats of death, forcible sexual attack, or substantial bodily injury in the immediate future for which there is no time for a complaint to the authorities and no time or opportunity to resort to the courts.

[11] The legislature amended subsection (2) of RCW 9A.76.170 in 2020 to change the language "in reckless disregard" to "by negligently disregarding." LAWS OF 2020, ch. 19, § 1.

9

of his defense to the escape charge (Count 2) to infer guilt from his silence as to the assault charge (Count 1).  The court instructed the jury:

> The defendant is not required to testify.  Although the defendant testified about Count 2, you may not use the fact that the defendant has not testified about Count 1 to infer guilt or to prejudice him in any way as to Count 1.

We presume that jurors follow the court's instructions.  Russell, 125 Wn.2d at 84.

The second factor weighs against severance.

### 3.  Jury Instruction

"The third factor to consider is whether the court properly instructed the jury to consider each count separately."  Russell, 125 Wn.2d at 66.  Here, the trial court instructed the jury that "[a] separate crime is charged in each count.  You must decide each count separately.  Your verdict on one count should not control your verdict on the other count."  Even so, Carmichael argues that the court's instruction "could not have had any meaningful effect" in guarding against prejudice from joinder because "the evidence of the escape was admitted for purposes of showing [his] culpability and consciousness of guilt as to the assault count."

But as discussed below, the court correctly ruled that evidence of the escape was cross admissible as evidence of Carmichael's consciousness of guilt of the assault.  So it was proper for the jury to consider the evidence for that purpose.[12]  And as much as Carmichael challenges the instruction as insufficient,

---

[12] While the court did not issue a limiting instruction on the escape evidence, failure to do so was not error.  State v. Jefferson, 11 Wn. App. 566, 571, 524 P.2d 248 (1974) ("evidence of 'flight' should not be the subject of an instruction" because it may place undue emphasis on that evidence); State v. Cobb, 22 Wn. App. 221, 225, 589 P.2d 297 (1978) (noting with approval "that no instruction was given on the subject of flight").

10

we have repeatedly approved of and relied on nearly the same instruction in upholding decisions denying motions to sever. See McDaniel, 155 Wn. App. at 861. This factor weighs against severance.

### 4. Cross Admissibility of Evidence

#### A. Evidence of Escape in a Separate Assault Trial

Carmichael argues the trial court erred in concluding that evidence of the escape charge would be admissible in a separate assault trial. Citing State v. Slater, 197 Wn.2d 660, 674, 486 P.3d 873 (2021), he asserts that the circumstances of the escape show he fled for reasons other than consciousness of guilt. We disagree.

In Slater, our Supreme Court recognized that evidence of flight following the commission of a crime is admissible and " 'may be considered by the jury as a circumstance, along with other circumstances of the case, in determining guilt or innocence.' " Slater, 197 Wn.2d at 668 (quoting State v. Bruton, 66 Wn.2d 111, 112, 401 P.2d 340 (1965)). But it also reiterated that " 'the circumstance or inference of flight must be substantial and real,' " not " 'speculative, conjectural, or fanciful.' " Slater, 197 Wn.2d at 668 (quoting Bruton, 66 Wn.2d at 112). In Slater, an out-of-custody defendant failed to appear for trial call after several court appearances in the underlying crime. 197 Wn.2d at 664. The court issued an arrest warrant, which the defendant moved to quash just over a month later. Slater, 197 Wn.2d at 666. The Supreme Court held those facts were too tenuous and speculative to infer the defendant failed to appear because of consciousness of guilt on the underlying crime. Slater, 197 Wn.2d at 670-71.

11

Unlike the defendant in Slater, Carmichael was in custody, released on a three-hour limited medical TRO, and ordered to return the same day. Carmichael never voluntarily returned. Instead, when police found him 45 days later, he tried to avoid returning to custody by running back into the house and hiding in the attic. And when deputies arrested him, he told them he was worried about going back to jail for a long time. These facts support an inference of consciousness of guilt.

Carmichael asserts that his "cogent or clear argument" that he was fearful of returning to jail because COVID-19 threatened his underlying health conditions "negate[s] 'any reasonable inference' that [his] violation of the [TRO] was for the purpose of avoiding prosecution."[13] But the trial court need not make a credibility determination about the State's and Carmichael's competing theories on why he did not return to jail to determine admissibility of the evidence. It need only

> decide whether or not the alleged evidence amounts to flight that supports a consciousness of guilt inference. If it does amount to flight evidence that supports a consciousness of guilt inference, the judge may allow the evidence to be considered by the jury.

Slater, 197 Wn.2d at 670.

Evidence of the escape was cross admissible to show consciousness of guilt in the assault case.

### B.  Evidence of Assault in a Separate Escape Trial

Carmichael also contends that evidence of the assault charge would not be cross admissible in a separate escape trial. We agree in part.

---

[13] Quoting Slater, 197 Wn.2d at 672-73.

Relevant evidence is generally admissible, but "[e]vidence which is not relevant is not admissible." ER 402. Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. To prove second degree escape, the court instructed the jury that the State had to show (1) Carmichael, having been charged with a felony, escaped from custody; (2) Carmichael knew his actions would result in leaving or remaining absent from confinement; and (3) the escape occurred in the state of Washington. See RCW 9A.76.120(1)(b). So the fact that Carmichael was lawfully in custody on a felony charge is relevant to the escape charge. But the nature of the felony and the facts supporting it are not.

Still, separate counts that may not be cross admissible do not always demand severance. Bythrow, 114 Wn.2d at 720. To support a finding that the trial court abused its discretion in denying severance, a defendant must be able to point to specific prejudice. Bythrow, 114 Wn.2d at 720. Here, the court instructed the jury to consider each count separately. And when, as here, the issues are relatively simple and the trial lasts only a couple of days, courts can reasonably expect the jury to compartmentalize the evidence so that evidence of one crime does not taint its consideration of the other crime. Bythrow, 114 Wn.2d at 721.

The trial court did not abuse its discretion by denying Carmichael's motions to sever.[14]

---

[14] Because Carmichael fails to show likely prejudice from joinder, we need not consider judicial economy concerns. See Bythrow, 114 Wn.2d at 718.

II. Ineffective Assistance of Counsel

Carmichael argues that his attorney was ineffective for failing to seek redaction of the judicial findings supporting issuance of bail in Exhibit 35 and Exhibit 41.[15] The State concedes that counsel was deficient but argues Carmichael suffered no prejudice.

We review ineffective assistance of counsel claims de novo. In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001). The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. State v. Grier, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011) (citing Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). To prevail on an ineffective assistance of counsel claim, the defendant must show (1) that defense counsel's representation was deficient and (2) that the deficient performance prejudiced the defendant. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

Defense counsel's performance is deficient if it falls below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88. A defendant alleging ineffective assistance must overcome a strong presumption that

---

[15] Carmichael argues the exhibits were "irrelevant" because other documents admitted at trial showed he was under restraint. But the State has the right to present ample evidence to prove every element of the crime. State v. Rahier, 37 Wn. App. 571, 574, 681 P.2d 1299 (1984). And, generally, the prosecution is "entitled to prove its case by evidence of its own choice." State v. Taylor, 193 Wn.2d 691, 698, 444 P.3d 1194 (2019).
Carmichael also argues that the documents contain impermissible judicial comments on the evidence. But the rule against judicial comments prevents the jury from being influenced by knowledge conveyed to it by the trial court as to its opinion of the evidence submitted. State v. Lampshire, 74 Wn.2d 888, 891-92, 447 P.2d 727 (1968). Here, the preliminary appearance judges' findings were themselves admitted as evidence.

counsel's performance was reasonable. State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). If we can characterize counsel's actions as legitimate trial strategy or tactics, performance is not deficient. Kyllo, 166 Wn.2d at 863. But counsel performs deficiently when "there is no conceivable legitimate tactic explaining" their performance. State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). When a claim of ineffective assistance rests on trial counsel's failure to challenge the admission of evidence, a defendant must show that the trial court would have likely sustained an objection. State v. Saunders, 91 Wn. App. 575, 578, 958 P.2d 364 (1998).

To show prejudice under the second prong of the Strickland test, the defendant must establish "there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." Kyllo, 166 Wn.2d at 862. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " Grier, 171 Wn.2d at 34 (quoting Strickland, 466 U.S. at 694).

The State offered and the court admitted Exhibit 35 and Exhibit 41 to show that Carmichael was in custody on a felony charge when he escaped. But both exhibits also contained the preliminary appearance courts' findings about why it held Carmichael on bail rather than releasing him on his personal recognizance. Both courts determined (1) "release without further conditions will not reasonably assure [Carmichael]'s presence when required" and (2) "there is a substantial danger that [he] will commit a violent crime, seek to intimidate witnesses, or otherwise unlawfully interfere with the administration of justice" without bail

15

conditions. The exhibits also show the courts imposed a condition prohibiting contact with Cassidy and firearm restrictions because Carmichael's offense amounted to "DV."

The judges' explanations of why they imposed bail were not relevant to the escape charge. Nor were the DV-related conditions of release. And evidence that is not relevant is not admissible. ER 402. We agree with Carmichael and the State that counsel's failure to seek redaction of that information from the exhibits before the trial court submitted them to the jury amounts to deficient performance.

We also conclude that the information was so prejudicial that it undermines our confidence in the outcome. The trial court charged the jury with determining whether Carmichael committed assault, a violent crime. The exhibits showed that two judges previously determined Carmichael posed a "substantial danger" to commit a "violent crime." The jury also had to determine whether Carmichael escaped from custody. The exhibits showed that two judges previously determined that Carmichael was a risk not to return to court. And finally, the trial court charged the jury with determining whether the assault was a DV crime. The exhibits showed that both preliminary appearance judges imposed "DV"-related conditions.

The trial court instructed the jury that "evidence" includes "the exhibits that I have admitted during the trial"; and that to decide whether a party has proved any proposition, it "must consider all of the evidence that I have admitted that relates to the proposition." Evidence that two judges had determined Carmichael

16

was likely to commit a violent crime and not return to court would weigh heavily on a jury. See, e.g., Musladin v. Lamarque, 555 F.3d 830, 841 (9th Cir. 2009) (jurors give great weight to a judge's words); People v. King, 384 Mich. 310, 315, 181 N.W.2d 916 (1970) (trial judges' words weigh heavily with juries). As a result, there is a reasonable probability that but for counsel's deficient performance, the outcome of the proceedings would have been different.

We reverse Carmichael's convictions and remand for retrial.[16]

_____
Brennan, J

WE CONCUR:

_____
Coburn, J.

_____
Mann, C.J.

---

[16] Because we reverse on this issue, we need not reach Carmichael's claims that the court erred by not giving a lesser-included-offense jury instruction, that cumulative error deprived him of the right to a fair trial, or that the court improperly imposed legal financial obligations and his attorney was ineffective for failing to object to them.