[No. 2986–2.   Division Two.   December 21, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLARD RAY COBB, *Appellant.*

*Jack E. Tanner* and *Tanner, McGavick, Felker, Fleming, Burgess & Lazares,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Richard Peterson, Chief Criminal Deputy,* for respondent.

SOULE, J.—Defendant appeals from a judgment of conviction for second–degree assault while armed with a deadly weapon. The assignments of error present three issues: (1) whether the knife used by the defendant was a deadly weapon; (2) whether evidence of failure to appear upon the trial date originally scheduled was admissible on the issue of guilt; (3) whether the defendant was denied constitutional due process and a fair trial because he did not have the effective assistance of counsel.

## KNIFE AS A DEADLY WEAPON

The knife was a heavy Boy Scout–type jackknife with a blade length of 2 3/8 inches. The victim suffered three wounds: a cut in the forehead, a cut in the chest over the sternum, and a cut in the muscle structure under the left arm. A treating physician characterized them as stab wounds, all of which required sutures. The wound to the left arm bled profusely and initially was suspected of having penetrated the chest cavity, although upon further examination it was determined that it did not. None of the wounds were in fact life threatening.

■ Under RCW 9.95.040, a knife with a blade longer than 3 inches is a deadly weapon as a matter of law. However, in *State v. Thompson*, 88 Wn.2d 546, 564 P.2d 323 (1977), the court recognized that a pocket knife with a blade *less* than 3 inches may be a deadly weapon depending on the circumstances of its use. If the blade is less than 3 inches, the question merely becomes one of fact rather than of law. *State v. Braun*, 11 Wn. App. 882, 526 P.2d 1230 (1974); *State v. Rolax*, 7 Wn. App. 937, 503 P.2d 1093 (1972); *State v. Sorenson*, 6 Wn. App. 269, 492 P.2d 233 (1972).

■ While recognizing that the question is one of fact, defendant argues that the jury's verdict was not supported by substantial evidence because the wounds were superficial and not in fact life threatening. Such an argument begs the question. The test is not the extent of the wounds actually inflicted. Rather, the test is whether the knife was *capable* of inflicting life threatening injuries *under the circumstances of its use. State v. Thompson, supra.*

The wounds inflicted were stabbing, not slashing, wounds to the head and chest. While perhaps a stab directly to the forehead may be unlikely to penetrate the skull, a blow with equal force directed to the throat area can easily reach major blood vessels. Likewise, a stab to the chest, but for the fortuitous striking of the sternum or a rib, can inflict a penetrating wound to the chest cavity and endanger major structures. Similarly, a blow to the area of the underarm

musculature can, with a slight change of direction, sever a major blood vessel. For these reasons, we conclude that there is substantial evidence from which the jury could have properly concluded that this knife was, under the circumstances of its use, a deadly weapon in fact. *United States v. Enos,* 453 F.2d 342 (9th Cir. 1972).

### Failure to Appear for Trial as Evidence of Guilt

Defendant assigns error to the action of the trial court in allowing testimony concerning defendant's nonappearance in court on another day and to the resulting bail forfeiture and bench warrant. Defendant's attack characterizes the court's action as admitting evidence of unrelated offenses and therefore asserts that the admission was error under *State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952).

The argument is misleading because the court proceedings referred to did not involve *another* offense. It is to be remembered that this offense occurred on March 4, the arraignment and trial setting was on March 11, and the trial date set was May 18, all in 1976. The nonappearance involved failure to appear for trial on *this* particular offense and there was further testimony that defendant was not apprehended until nearly a year later.

In *State v. Jefferson,* 11 Wn. App. 566, 570, 524 P.2d 248 (1974), the court recognized that failure to appear at trial is admissible as circumstantial evidence of guilt. The court declined to limit evidence of flight to that flight intended to avoid immediate arrest. In so doing, it stated:

> Jefferson further contends that not only was it improper for the prosecutor to equate his failure to appear with his being a dishonest and untruthful person but that it was a fundamental error to equate his "non-appearance" with "flight." He points out that although in several Washington cases escape from custody prior to trial has been equated with "flight," in no case has the failure to appear at trial been so treated. He cites *State v. Wilson,* 26 Wn.2d 468, 482, 174 P.2d 553 (1946), for the statement that:
>
> > The prevailing rule on the subject in this country is that the flight of a person *after the commission of a*

*crime and before his arrest* is a circumstance to be considered with the other circumstances of the case in determining his guilt or innocence. See 25 A.L.R. 886 *et seq.,* where the cases are collated. That is the rule in this jurisdiction.

(Italics Jefferson's.) We are satisfied, however, that the "prevailing rule" is not as constricted as the quoted language of *Wilson* implies.

The rationale which justifies the admission of evidence of "flight" is that, when unexplained, it is a circumstance which indicates a reaction to a consciousness of guilt. 29 Am. Jur. 2d *Evidence* § 280 (1967); 1 C. Torcia, *Wharton's Criminal Evidence* § 214, at 450 (13th ed. 1972). In many cases, the justification for evidence of flight is that it is a manifestation of an instinctive or impulsive reaction. A decision to avoid trial, although not an impulsive reaction, is nevertheless a circumstance which, *if unexplained,* might reasonably be considered to be the act of one who is conscious of his guilt.

(Italics ours.)

Our search of the report of proceedings has failed to reveal any testimony by the defendant even attempting to explain his failure to appear on the date originally scheduled, or to account for his long absence thereafter. Therefore, the evidence was admissible as circumstantial evidence of guilty knowledge. It also served the legitimate secondary function of explaining to the jury why the case was so long in coming to trial. We note, with approval, that no instruction was given on the subject of flight. *State v. Bruton,* 66 Wn.2d 111, 401 P.2d 340 (1965).

### EFFECTIVENESS OF COUNSEL

Although defendant challenges the effectiveness of counsel and in substance claims that certain inaction demonstrates counsel's incompetence, he nevertheless recognizes that the test of competency is that enunciated in *State v. Thomas,* 71 Wn.2d 470, 471, 429 P.2d 231 (1967): "After considering the *entire record,* can it be said that the accused was afforded an *effective representation* and a *fair* and *impartial* trial?" *See also State v. Johnson,* 74 Wn.2d 567, 570, 445 P.2d 726 (1968). Other cases applying this

rule are noted in *State v. Jury,* 19 Wn. App. 256, 576 P.2d 1302 (1978).

■ Defendant has a weighty burden of proving: first, that in view of the entire record he was denied effective representation; and second, that he was prejudiced thereby. *State v. Jury, supra.* As *Jury* further explains, counsel is not expected to perform flawlessly or with the highest degree of skill. It is only when his performance is such that no reasonably competent attorney would have so conducted himself, that a client has grounds for complaint and the court a duty to grant relief.

We have carefully read and considered the record and conclude not only that counsel's performance exceeded the minimum performance standards set by *Jury,* but that his performance was very good. He examined and cross–examined vigorously and intelligently, he presented as best he could under a difficult factual pattern the defendant's plea of self–defense, he pressed his objections to offered evidence and in every way made the most of the cause with which he was charged. If, perchance, he feels affronted at the "after the fact" challenge to his competency, he has just cause so to feel. As the court observed in *State v. Thomas, supra* at 472:

> The effectiveness of the competence of counsel cannot be measured by the result obtained. Some defendants are, in fact, guilty and no amount of forensic skill is going to bring about an acquittal.

The *only* indicia of incompetence to which defendant, a black man, points, is that counsel in his challenge to the racial composition of the petit jury array, did not include an attempt to show the percentage of Negroes in the population of Kitsap County.

Counsel's decision to press or not press such an aspect of a trial is of a tactical nature, a judgment call about which opinions may well differ. *State v. Thomas, supra.* The

jurors were each asked questions about their racial attitudes.[1]

There was colloquy between counsel and the court concerning the manner in which the petit jury was selected. The record reflects the following:

MR. DENEND: . . .

. . .

For some reason all of the personnel that were available for selection on the jury were Caucasian, and I would like to assure myself that there wasn't something done in the course of arranging for this jury that would eliminate the possibility of having members of other races available for the jury in the screening of voting records or so on, and I think that should be brought to the attention of the Court, to point out that it may have been a coincidence, but I would like to make sure that my client's rights are properly protected in that case, in that it was just a coincidence and not some arrangement whereby the available jurors were screened for some reason.

THE COURT: Are you asking the Court to investigate that method of—

MR. DENEND: I am just making that record and asking the clerk to provide the means by which I guess after this is over with, for the purposes of the record, the means by which this particular jury was selected.

THE COURT: Okay. I will so order. You should make whatever records you have available to Mr. Denend for indicating how this jury panel was selected and how the normal procedure is.

Pursuant to defense counsel's request, which we consider to be a motion, a hearing was held in which the county clerk explained the process by which jurors were selected in Kitsap County and demonstrated that it complied with

---

[1]From a reading of the record made at the time of selecting the jury, it appears that defense counsel was primarily concerned not so much with the absence of Negroes on the panel as with the excessive number of women. He was attempting to secure an all–male jury, presumably in the hope that they would be sympathetic to a man who had encountered his wife in the company of another man under questionable circumstances.

RCW 2.36.060 and that the purposeful discriminatory screening practice feared by counsel did not exist.

Indeed, the method described clearly demonstrated that there was no irregularity in the selection of the jury panel and that there was no opportunity for discrimination. *Cf. State v. Smith,* 11 Wn. App. 216, 521 P.2d 1197 (1974). The mere fact that a particular panel has no Negroes is insufficient in and of itself to show discrimination. *State v. Green,* 70 Wn.2d 955, 425 P.2d 913 (1967). Even a slight irregularity in following the statutory method of selecting a panel does not give rise to a presumption of prejudice. *State v. Smith,* 74 Wn.2d 744, 446 P.2d 571 (1968).

■ The exposition of the jury selection method apparently satisfied counsel at the time it was given and there is no suggestion in the record that it did not satisfy the defendant himself at that time. Counsel's decision to stick to the problem at hand, *i.e.,* the guilt or innocence of his client, rather than to further pursue the collateral issue of the method of jury selection, was an isolated tactical decision which we will not second–guess. His action appears to have been psychologically prudent particularly in view of the long delay which had already occurred in bringing the defendant to trial. On the entire record before us, his decision not to further press matters is not to be equated with ineffectiveness or incompetence. Defendant had a fair trial and the record contains no evidence of prejudice or lack of due process.

The judgment is affirmed.

PEARSON, C.J., and REED, J., concur.

Reconsideration denied January 26, 1979.

Review denied by Supreme Court June 1, 1979.