

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34574-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARLO MORRIS CERUTTI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — A neighborhood garbage crisis led to Carlo Cerutti's prosecution for and conviction of second degree assault with a deadly weapon. On appeal, Cerutti challenges the sufficiency of evidence to convict him of the crime. He claims that his use of a sword to cut his neighbor's hand did not constitute the exploit of a deadly weapon. We disagree and affirm the conviction.

## FACTS

This prosecution arises from the brandishing of a sword by Carlo Cerutti against his neighbor, McGlother Parker. Because Cerutti asks that we review the sufficiency of evidence, we purloin the facts from the trial testimony.

McGlother Parker and Carlo Cerutti resided in adjacent units of a duplex on

Wabash Avenue in Spokane. Before the events leading to the prosecution, Parker and Cerutti's prospective wife, Joyce, suffered an inimical relationship while Joyce lived alone in one of the residences. When Cerutti joined Joyce in the residence, the aggression and enmity worsened.

On an unnumbered number of occasions, law enforcement intervened when confrontations between McGlother Parker and the Cerutti couple escalated. Once Parker struck Carlo Cerutti in the face purportedly in self-defense. On October 16, 2015, Parker procured an anti-harassment order against Joyce and Carlo Cerutti. The tumultuous relationship nonetheless ripened into criminal charges a month later.

On November 14, 2015, McGlother Parker dismayly discovered another's waste in his outdoors garbage receptacle. Parker moved the refuse onto the Ceruttis' adjacent garbage can. After he returned inside his half of the duplex, Parker spied Joyce Cerutti grab the transferred trash from her container and fling the trash toward Parker's home. Parker then exited his apartment, assembled the undesired rubbish, and hurled it in Joyce's direction. The refuse did not strike Joyce.

A heated exchange banally ensued between McGlother Parker and Joyce Cerutti. The Cerutti family entertained guests that day and the gaggle, including Carlo Cerutti, paraded onto a patio and parted Parker and Joyce. The parties quieted and filed back inside their respective sides of the duplex, but not before Carlo Cerutti spat in Parker's direction.

Moments later, rubbish flew from an unknown hand toward McGlother Parker's apartment. The parties rushed outside and resumed the bellicosity. Parker and Joyce Cerutti again shared pugnacious vocabularies until Carlo Cerutti separated the two. Cerutti convinced Joyce to return inside. The testimony of Parker and Cerutti diverges thereafter.

According to McGlother Parker, Carlo Cerutti invited Parker to remain still, because Cerutti had "something" for Parker. Report of Proceedings (RP) at 58-59. A compliant Parker accepted the invitation and waited on his front doorstep. Cerutti entered his duplex and returned with a bladed instrument in hand. Parker described the intimidating implement as "a sword of some sorts, like a warrior-type battle sword with four blades on it." RP at 60.

According to McGlother Parker, Cerutti swung the sword in Parker's direction three times, causing Parker to jump backwards. On at least one of the swings, Cerutti employed the sword in a "chopping" motion. RP at 59. Parker instinctively reached for the sword to stop the swinging of the weapon and thereby cut his left hand on a blade. Parker noticed anger in Cerutti, and he worried about the extent to which Cerutti could injure him. Parker, despite his hand injury, successfully disarmed Cerutti, returned to his apartment, and called 911. Parker's injury caused pain and required sutures.

In his trial testimony, Carlo Cerutti disagreed that he returned outside with a sword in hand. Cerutti testified that McGlother Parker entered Cerutti's residence. Cerutti

3

grabbed the sword in an attempt to protect himself. Parker grabbed the blade while Cerutti shoved Parker out the front door. Cerutti denied swinging the blade in Parker's direction. During trial testimony, Cerutti agreed that he grasped the sword because of its intimidating nature, that the instrument could kill someone, and that the instrument qualified as a deadly weapon.

Two independent witnesses observed the confrontation, occurring outside the duplex, between Carlo Cerutti and McGlother Parker. Blake Johnson observed the events from across the street. Johnson did not know Cerutti or Parker before November 14. He was visiting a friend's house to conduct an estate sale. Johnson saw and heard the Ceruttis and their guests surround Parker, call him names, and pretend to punch Parker. Parker turned his back to the small crowd. A man spat on Parker's back. Johnson judged Parker as keeping calm and attempting to avoid a confrontation. The Ceruttis and guests threw garbage in Parker's yard, and Joyce Cerutti hurled rocks at Parker's door. Johnson never saw Parker enter the Cerutti residence. No trial counsel asked Johnson if he saw Cerutti brandish a sword.

A second percipient witness, Bernard Mallory, was visiting a friend on Wabash Avenue. Mallory also had not met either Carlo Cerutti or McGlother Parker. As he retrieved personal property from his car, Mallory glimpsed the altercation. He saw Cerutti with a sword resting on his hip. Mallory then observed Cerutti lunge at Parker and stab Parker in the hand. He never noticed Parker entering Cerutti's home.

4

PROCEDURE

The State of Washington charged Carlo Cerutti with second degree assault with a deadly weapon. A jury found Cerutti guilty as charged.

LAW AND ANALYSIS

Carlo Cerutti's sole challenge on appeal is to the sufficiency of evidence to convict him of second degree assault with a deadly weapon. We therefore outline familiar principles of law with respect to sufficiency of evidence in a criminal prosecution. To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). "Substantial evidence" is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise. *State v. Stenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). In claiming insufficient evidence, Cerutti necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). These inferences must be drawn in favor of the State and interpreted most strongly against Carlo Cerutti. *State v. Salinas*, 119 Wn.2d at 201.

RCW 9A.36.021 covers the crime of second degree assault. An offender may commit the crime by various acts of violence, one of which act is the use of a deadly weapon. RCW 9A.36.021 declares:

(1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:

. . . .

(c) Assaults another with a deadly weapon.

Carlo Cerutti's jury convicted him under RCW 9A.36.021(1)(c). RCW 9A.04.110(6) defines a "deadly weapon" as:

any . . . weapon, device, instrument, article, or substance . . . which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.

In turn, under RCW 9A.04.110(4)(b), "substantial bodily harm"

means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part.

On appeal, Carlo Cerutti argues that, even when viewed in a light most favorable to the State and when we analyze the manner in which he employed the sword, the trial testimony failed to establish that his sword functioned as a deadly weapon. Cerutti emphasizes that McGlother Parker did not testify as to the strength or velocity with which he swung the sword or that Parker feared harm from the swinging of the sword.

We disagree that no evidence showed that McGlother Parker feared from the conduct of Carlo Cerutti. Parker testified that he instinctively reached for the weapon in order to protect himself and because he knew not the extent to which Cerutti might expend effort to harm him. Such defensive conduct connotes fear. From this testimony,

6

a jury could reasonably find that Parker feared for his safety, if not his life.

Although evidence established fear, the State need not have proved fear. Because the criminal code does not define "assault," Washington courts employ three common law definitions of "assault:" (1) an unlawful touching, (2) an attempt with unlawful force to inflict bodily injury on another, tending but failing to accomplish it, and (3) putting another in apprehension of harm. *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009). Since Cerutti unlawfully struck Parker, apprehension of fear did not rise to a required element of the crime.

We may agree that no testimony established the speed or vigor by which Cerutti wielded the sword. Nevertheless, the law does not require such proof to convict one of second degree assault based on use of a deadly weapon.

When determining whether a weapon qualifies as a deadly weapon for purposes of second degree assault, we consider the circumstances under which the defendant employed the weapon. The test is not the extent of the wounds actually inflicted. *State v. Cobb*, 22 Wn. App. 221, 223, 589 P.2d 297 (1978). Rather, the test is whether the weapon was capable of inflicting life threatening injuries. *State v. Cobb*, 22 Wn. App. at 223. RCW 9A.04.110(6) does not contemplate an actual injury to establish a particular weapon as deadly.

Under the circumstances and viewing the facts in a light most favorable to the State, a rational trier of fact could conclude that Carlo Cerutti used the sword under

circumstances or in a manner capable of producing death or substantial bodily harm. Cerutti's blade caused a laceration to McGlother Parker's finger severe enough to require sutures, an injury that could qualify as a temporary but substantial disfigurement. Cerutti swung the blade in Parker's direction at least three times following an intense verbal dispute. A rational trier of fact could have concluded that a razor that sharp could have caused death if thrusted into a vital artery. A stab to the chest or throat with such an instrument would at the very least cause substantial injury. Accordingly, we conclude that Cerutti used the sword as a deadly weapon for purposes of RCW 9A.36.021.

Carlo Cerutti also argues that, even when viewed in a light most favorable to the State, the trial testimony failed to establish that he intended to use the sword as a deadly weapon. Nevertheless, we note that RCW 9A.36.021(1)(c) only requires that the defendant intend to assault the victim, and, in the course of the assault, the defendant used a weapon under circumstances that readily could have caused substantial bodily injury. The statute does not necessitate that the defendant intended to use the weapon in a deadly manner.

Under the criminal code, "[a] person acts with intent or intentionally when . . . acting with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a). Sufficient facts support a jury finding that Carlo Cerutti held the requisite intent to touch McGlother Parker without permission, such that an assault occurred. Although not necessary to uphold the verdict, the jury could have even

reasonably inferred further that Cerutti intended to use the sword as a deadly weapon. Testimony supporting this conclusion included the deep seated antagonism between the men, Cerutti's spitting at Parker, Parker's argument with Cerutti's wife, Cerutti's telling Parker to wait while he grabbed the sword, and the eyewitness testimony that Cerutti lunged at Parker.

Three Washington decisions bolster our conclusion of sufficiency of evidence. In *State v. Brakes*, 1 Wn. App. 987, 465 P.2d 683 (1970), John Brakes argued insufficiency of evidence to convict him of second degree assault with a deadly weapon because a bomb thrown at police officers exploded in midair rather than injuring any officer. This court held that the State presented substantial evidence from which the jury could determine that the firebomb qualified as an object likely to produce bodily harm. The bomb functioned as a deadly weapon regardless of whether it struck the officer directly, since the officer stood within a range of danger.

In *State v. Cobb*, 22 Wn. App. 221 (1978), William Cobb employed a jackknife to cut his victim in the forehead, in the chest over the sternum, and in the muscle structure under the left arm. A treating physician characterized the injuries as stab wounds, all of which required sutures. None of the wounds were in fact life threatening. Nevertheless, we held that sufficient evidence permitted a jury to properly conclude that Cobb utilized the knife under circumstances that rendered the knife a deadly weapon.

9

In *State v. Rush*, 14 Wn.2d 138, 127 P.2d 411 (1942), the victim testified that Theodore Rush, when within four feet from a deliveryman, threatened to cut the man's throat with a pocket knife if he refused to give Rush a loaf of bread. The Supreme Court held that Rush used the knife as a deadly weapon.

### CONCLUSION

We affirm Carlo Cerutti's conviction for second degree assault by reason of use of a deadly weapon.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Fearing, J._
Fearing, C.J.

WE CONCUR:

_Korsmo, J._

_Siddoway, J._
Siddoway, J.