[No. 2295-1. Division One. July 8, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. JOSEPH JEFFERSON III, *Appellant.*

*MacDonald, Hoague & Bayless* and *David M. Shelton,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Bruce M. Ries, Deputy,* for respondent.

JAMES, J.—At jury trial, Joseph Jefferson was convicted of violating the Uniform Controlled Substances Act. Counsel on appeal did not represent Jefferson at trial.

The State's evidence established that at 3 a.m. a Washington state patrolman observed Jefferson's car "weaving back and forth" across the center line of a road. The officer testified that when he first confronted Jefferson, he observed that "he was very dreamy acting, almost like he was in slow motion" and that "the pupil of his eye was huge, almost completely dilated, and he was very unsteady on his feet—wobbling, swaying." When asked if he was "taking tranquilizers, pills or medicines of any kind," Jefferson's reply was, "Maybe."

Jefferson was placed under arrest for driving while under the influence of intoxicants and the car he drove was inventoried. A box which contained small amounts of cocaine and phencyclidine was found under the driver's seat. Both are controlled substances. Jefferson told the officer that he had consumed "a couple of hits" of both beer and whiskey. The State's expert testified that alcohol is a sedative, cocaine a "typical anesthetic and a stimulant" and that phencyclidine is a "tranquilizer or sedative." Jefferson was charged with unlawful possession of drugs. He testified that

others had driven the car and he was unaware of the existence of the box found under the seat.

Over Jefferson's objection, the trial judge ruled that the State could present evidence that Jefferson failed to appear on the day the case was first scheduled to be tried and that a bench warrant had been issued. Jefferson testified that he was "nervous and was afraid and decided to leave" and that he went to California "to find a house, find work, because I had no intention of showing up for this court." The jury was instructed that:

> Flight or attempted flight by one who has been or may be charged with a criminal act is a circumstance which you may consider, together with all other circumstances, in determining guilt or innocence of the defendant.

Instruction No. 9.

Jefferson contends and the State concedes that the critical question presented to the jury was Jefferson's credibility. By four assignments of error Jefferson raises two issues:

(1) Was he so prejudiced by the prosecutor's closing remarks that he was denied a fair trial?
(2) Was a flight instruction proper when there was no evidence that he fled from the scene of arrest or escaped from custody after arrest?

In his closing argument the prosecutor said:

I suggest to you two things; one, he is a liar; and, two, he was the possesser [sic] of controlled substances.

First, he is a liar on this point. He says he didn't take any drugs on November 19th except marijuana. Okay. We have got phencyclidine, cocaine and alcohol, and I think according to Kay Sweeney the effects of those drugs are going to be inconsistent, perhaps divergent. You are not really sure how a person is going to react.

What was the behavior observed by Sergeant Miller? One minute Mr. Jefferson is talkative, and then he says nothing. The sergeant indicates there were several boxes he had to check off for his demeanor, and he checked off just about every one, and this man is all over the place, he is changing from one minute to the next, consistent with someone who is on all three drugs.

In reference to Jefferson's failure to appear for trial, the prosecutor said:

> Mr. Jefferson told you he had no intention of showing up. At this point I will ask you, if he was the unwitting possesser [*sic*], didn't know anything about it, why, why isn't he going to show up in court? I think this is consistently indicative of a man who is guilty and knows he is guilty.
>
> . . . He had no intention of showing up, and yet this man is represented as being an honest, truthful person.

Jefferson contends that all of these prosecutorial assertions constituted prejudicial misconduct requiring a new trial.

 Jefferson acknowledges his burden of establishing not only the impropriety of the prosecutor's argument but also its prejudicial effect. *State v. Rose,* 62 Wn.2d 309, 382 P.2d 513 (1963); *State v. Harold,* 45 Wn.2d 505, 275 P.2d 895 (1954); *State v. Navone,* 186 Wash. 532, 58 P.2d 1208 (1936). He first argues that the prosecutor's assertions that he was a liar and that his conduct was "consistent with someone who is on all three drugs" are not supported by the evidence.

 While it is improper argument for the prosecutor, a quasi-judicial officer, to assert his personal belief in a defendant's guilt, it is not improper for him to comment upon the evidence which may bear upon a defendant's credibility, both as a witness and in his statements to an arresting officer. *State v. Adams,* 76 Wn.2d 650, 458 P.2d 558 (1969).

 In judging the propriety of jury argument, statements of counsel cannot be considered out of context. *State v. Rose, supra.* Furthermore, an improper argument does not necessarily warrant the granting of a new trial. A new trial should be granted only if the argument prejudiced the defendant's right to a fair trial. *State v. Harold, supra; State v. Walton,* 5 Wn. App. 150, 486 P.2d 1118 (1971).

Whether or not an improper argument prejudiced a defendant's right to a fair trial can be judged most effectively by the trial judge. His judgment will not be reversed on appeal in the absence of "evidence of a sufficient nature to

allow us to hold that there has been an abuse of discretion." *State v. Walton, supra* at 152. The prosecutor prefaced his argument with the admonition that both counsel were "advocates" and that their remarks were not evidence. But the evidence would permit a finding that Jefferson was not truthful. The trial judge did not err in determining that the prosecutor's closing argument was not improper.

Jefferson further contends that not only was it improper for the prosecutor to equate his failure to appear with his being a dishonest and untruthful person but that it was a fundamental error to equate his "non-appearance" with "flight." He points out that although in several Washington cases escape from custody prior to trial has been equated with "flight," in no case has the failure to appear at trial been so treated. He cites *State v. Wilson*, 26 Wn.2d 468, 482, 174 P.2d 553 (1946), for the statement that:

> The prevailing rule on the subject in this country is that the flight of a person *after the commission of a crime and before his arrest* is a circumstance to be considered with the other circumstances of the case in determining his guilt or innocence. See 25 A. L. R. 886 *et seq.*, where the cases are collated. That is the rule in this jurisdiction.

(Italics Jefferson's.) We are satisfied, however, that the "prevailing rule" is not as constricted as the quoted language of *Wilson* implies.

■ The rationale which justifies the admission of evidence of "flight" is that, when unexplained, it is a circumstance which indicates a reaction to a consciousness of guilt. 29 Am. Jur. 2d *Evidence* § 280 (1967); 1 C. Torcia, *Wharton's Criminal Evidence* § 214, at 450 (13th ed. 1972). In many cases, the justification for evidence of flight is that it is a manifestation of an instinctive or impulsive reaction. A decision to avoid trial, although not an impulsive reaction, is nevertheless a circumstance which, if unexplained, might reasonably be considered to be the act of one who is conscious of his guilt.

Although in *State v. Bruton*, 66 Wn.2d 111, 112, 401 P.2d

340 (1965), a flight instruction was held to be reversible error, it is pointed out that "[t]he law makes no nice or refined distinctions as to the manner or mode of flight, and the range of circumstances which may be shown as evidence of flight is broad." *Bruton* points out that a "deliberate attempt to avoid arrest and *prosecution*" (Italics ours.) may be circumstantial evidence of a guilty conscience. *Bruton's* requirement is that:

> the evidence or circumstances introduced and giving rise to the contention of flight must be substantial and sufficient to create a reasonable and substantive inference that the defendant's departure from the scene of difficulty was an instinctive or impulsive reaction to a consciousness of guilt or was a *deliberate effort* to evade arrest and *prosecution*.

(Italics ours.) *State v. Bruton, supra* at 112-13. Jefferson's "flight" was properly submitted to the jury.

Though we find no error in this case, we are persuaded that evidence of "flight" should not be the subject of an instruction. Technically, the instruction given may not be a comment on the evidence. *State v. Deatherage*, 35 Wash. 326, 334, 77 P. 504 (1904). But neither was it required as a proper function of instructing the jury on the applicable principles of law. Instructions of this ilk, though time-honored, should be discarded. At best, they merely sanction the use of circumstantial evidence. At worst, they place undue emphasis upon that evidence. Instructions on circumstantial evidence should be expressed in the abstract. We also agree with the District of Columbia Circuit Court of Appeals that

> evidence of flight tends to be only marginally probative as to the ultimate issue of guilt or innocence. The interest of justice is perhaps best served if this matter is reserved for counsel's argument, with little if any comment by the bench.

*United States v. Robinson,* 475 F.2d 376, 384 (D.C. Cir. 1973).[1]

Affirmed.

SWANSON, C.J., and CALLOW, J, concur.

[1]Significantly, both Illinois and Nebraska agree that flight is properly a subject for argument but not for instruction. Illinois Pattern Jury Instructions—Criminal § 3.03 (1968); Nebraska Jury Instructions § 14.64 (1969).