**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
May 20, 2021

González, C.J.
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 20, 2021

Susan L. Carlson
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) ) ) | No. 98795-5 |
| Respondent, | ) ) | |
| v. | ) ) | En Banc |
| SAMUEL DAVID OBERT SLATER, | ) ) ) | |
| Petitioner. | ) ) ) ) | Filed: May 20, 2021 |

WHITENER, J.—After attending multiple court hearings in his case for violating a domestic violence no contact order (DVNCO), Samuel Slater missed court the day his case was called for trial (trial call).[1] The judge issued a warrant for his arrest, and Slater came to court to quash the warrant just over one month later. The State added a charge of bail jumping for his failure to appear (FTA). Slater moved to sever the charges, alleging that the charges were not cross

---

[1] "Trial call" in Snohomish County is the equivalent of a trial readiness hearing and *not* the first day of trial. *See* Wash. Supreme Court oral argument, *State v. Slater*, No. 98795-5 (Feb. 16, 2021), at 37 min., 55 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org (discussing trial call procedure in Snohomish County).

*State v. Slater (Samuel David Obert)*, No. 98795-5

admissible under an ER 403 and ER 404(b) analysis and that trying the charges together would cause him unfair prejudice and allow for improper propensity arguments as both charges included violation of a court order. Two different judges concluded that the FTA was admissible as flight evidence. This allowed the State to argue the inference that Slater's FTA for trial call showed that he was conscious of his guilt on the underlying DVNCO charge. The State capitalized on this admission and during closing arguments made multiple comments regarding Slater's guilt flowing from the FTA. Slater appealed, alleging that the trial court abused its discretion in not severing the charges as an FTA is not automatically admissible to infer consciousness of guilt and that the prosecutor committed misconduct during closing. The Court of Appeals affirmed.

We reverse the Court of Appeals, reverse the convictions, and remand for the two charges to be severed. Missing one court hearing does not rise to the level of flight evidence from which one can infer consciousness of guilt on the underlying crime. The judges in this case abused their discretion when they repeatedly denied Slater's motion to sever the charges because the charges are not cross admissible. Further, although we need not reach this issue, the admission of the FTA as evidence of consciousness of guilt allowed the prosecutor to capitalize on the admission and to make improper comments regarding Slater's alleged guilt and propensity to violate court orders. This impropriety could not have been cured

2

*State v. Slater (Samuel David Obert)*, No. 98795-5

by a jury instruction and the pretrial rulings effectively allowed the improper

arguments during the State's closing arguments.

FACTS AND PROCEDURAL HISTORY

In 2016, Slater stood outside the window of a woman he had previously

dated and "tr[ied] to . . . get [her] attention . . . by any means," while there was a

no contact order in place. 1 Verbatim Report of Proceedings (VRP) (Nov. 14, 2018)

at 143-44, 149-50. The State charged Slater with felony violation of a DVNCO

because of the incident.

On September 8, 2017, the case was set for trial call but Slater failed to

appear, and the trial court issued a bench warrant. On October 16, 2017, Slater

appeared in court to quash the warrant. The State subsequently added the charge of

bail jumping for his FTA at trial call.

Slater filed a motion to sever the bail jumping charge from the DVNCO

violation charge. In his motion he alleged that joinder of felony violation of a

DVNCO and bail jumping was prejudicial and that the charges are not cross

admissible under ER 404(b) because it would amount to improper propensity

evidence. The pretrial judge denied the motion, reasoning that the charges were

cross admissible under case law that allowed for a bail jumping charge to be joined

with the underlying charge and, therefore, that prejudice would exist whether the

charges were severed or not. The pretrial judge did not assess cross admissibility

3

*State v. Slater (Samuel David Obert)*, No. 98795-5

under the ER 404(b) framework other than mentioning related case law in the "ER 404(b) arena." VRP (Nov. 9, 2018) at 12.

During motions in limine, Slater renewed his motion to sever the charges and moved to exclude the FTA as evidence of flight or evidence of consciousness of guilt. The trial judge denied the renewed motion, reasoning that the probative value outweighed the prejudice. Slater again renewed the motion at the end of the state's case, but the judge again denied the motion.

During his closing argument, the prosecutor made multiple comments that explicitly referred to Slater's missed court appearance as evidence that Slater was guilty. Some of these comments will be recounted in the prosecutorial misconduct section, *infra*, so for brevity we do not recount them here. Slater objected to only one comment.

The jury found Slater guilty of both charges. Slater appealed, alleging that the trial court abused its discretion in admitting evidence of the FTA as evidence of consciousness of guilt and erred when it denied his motion to sever. Further, Slater alleged that the prosecutor committed reversible misconduct during closing argument. The Court of Appeals disagreed and affirmed the convictions. *State v. Slater*, No. 79335-7-I (Wash. Ct. App. June 15, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/793357.pdf. Slater then appealed to this court, and we granted review. *State v. Slater*, 196 Wn.2d 1017 (2020).

*State v. Slater (Samuel David Obert)*, No. 98795-5

The Washington Association of Criminal Defense Lawyers, the American Civil Liberties Union of Washington, the Washington Defender Association, Columbia Legal Services, and the King County Department of Public Defense (WACDL et al.) have filed a joint amicus curiae brief in support of Slater.

ANALYSIS

I.    FTA as flight evidence and the motion to sever charges

This court reviews a trial court's evidentiary rulings and its ruling on a motion to sever charges for abuse of discretion. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997); *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994). "Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993).

A.    A single FTA is not flight evidence from which to infer consciousness of guilt

Evidence of flight from which to infer a defendant's consciousness of guilt has been admissible evidence since the English common law. *See Hickory v. United States*, 160 U.S. 408, 420, 16 S. Ct. 327, 40 L. Ed. 474 (1896). As the old adage says, "'The wicked flee when no man pursueth, but the innocent are as bold as a lion.'" *Id*. at 416 (quoting the trial court). The United States Supreme Court rejected this general proposition and has warned for over a century that flight is not limited to those who are guilty, it also includes some who are innocent. *Id*. at 421. In doing

5

*State v. Slater (Samuel David Obert)*, No. 98795-5

so, the Court opined that instructing the jury that only the guilty conceal a crime "ignor[ed] the fundamental truth, evolved from the experience of mankind, that the innocent do often conceal through fear or other emotion." *Id*. Therefore, while flight evidence may be considered by the jury, the court must not instruct the jury that flight evidence is conclusive proof of guilt. *Id*. at 422.

In *State v. Bruton*, 66 Wn.2d 111, 112, 401 P.2d 340 (1965), this court examined the concept of flight evidence. We opined, "It is an accepted rule that evidence of the flight of a person, following the commission of a crime, is admissible and may be considered by the jury as a circumstance, along with other circumstances of the case, in determining guilt or innocence." *Id*. While the manner or mode of flight may include a range of circumstances,

> the circumstance or inference of flight must be *substantial and real*. It *may not be speculative, conjectural, or fanciful*. In other words, the evidence or circumstances introduced and giving rise to the contention of flight must be *substantial and sufficient* to create a *reasonable and substantive inference* that the defendant's departure from the scene of difficulty was an instinctive or impulsive reaction to a consciousness of guilt or was a deliberate effort to evade arrest and prosecution. Pyramiding vague inference upon vague inference will not supplant the absence of basic facts or circumstances from which *the essential inference of an actual flight* must be drawn.

*Id*. at 112-13 (emphasis added).

When flight evidence is admissible to show an inference of consciousness of guilt, "it tends to be only marginally probative as to the ultimate issue of guilt or innocence." *State v. Freeburg*, 105 Wn. App. 492, 498, 20 P.3d 984 (2001). The

6

*State v. Slater (Samuel David Obert)*, No. 98795-5

Court of Appeals has looked to the Fifth Circuit Court of Appeals's test for the probative value of flight evidence in which the Fifth Circuit examines

> the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

*Id*. (citing *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977)); *see also United States v. Dixon*, 201 F.3d 1223, 1232 (9th Cir. 2000) (using the same test).

In *Bruton*, the defendants were stopped by a store detective and accused of shoplifting, and while the detective went to call the police, the defendants left the store. 66 Wn.2d at 111-12. Police apprehended them later a few blocks away. *Id*. at 112. On appeal, the remaining defendant (one was acquitted at trial) alleged that the trial court erred in instructing the jury "it could consider, as a circumstance bearing upon guilt or innocence, whether appellant fled from the scene."[2] *Id*. In reversing, this court held that the defendants' leaving the scene of the crime was *not* evidence of flight because it was mere speculation at the time they were initially stopped whether they possessed the stolen items in question, and the store detective left the women alone with his assistant to go back into the store to call police. *Id*.

---

[2] The Washington Pattern Jury Instructions no longer recommend a jury instruction on evidence of flight and no such instruction was given in this case. *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 6.21, at 201 (4th ed. 2016).

7

at 113. It was, thus, unclear how the defendants left the scene and if they resisted some effort to stop them. *Id*. Therefore, any evidence of "flight" was purely speculative.

While we did not find the evidence in *Bruton* to rise to the level of flight evidence sufficient to infer consciousness of guilt, Washington courts have opined that flight evidence is admissible as evidence of consciousness of guilt in other cases. Examples include cases in which the defendant flees the scene of the crime, escapes police contact, travels to a different state, or evades arrest for a significant period of time, among others. *See, e.g.*, *State v. Wilson*, 26 Wn.2d 468, 174 P.2d 553 (1946) (flight instruction was proper when, after the murder, the defendant cleaned the murder weapons, did not contact police though he claimed self-defense, destroyed his clothing, and went to Idaho for four days); *State v. Hebert*, 33 Wn. App. 512, 513, 656 P.2d 1106 (1982) (flight evidence admissible when defendant "was rapidly apprehended but, during a 'pat-down' search, broke away and fled"); *State v. Reed*, 25 Wn. App. 46, 50, 604 P.2d 1330 (1979) (unexplained absence following a murder at defendant's place of employment and allegedly planning to escape from jail sufficient to support an inference of flight); *State v. Nichols*, 5 Wn. App. 657, 659, 491 P.2d 677 (1971) (flight instruction proper when "shortly after the robbery and prior to the arrest [police and the victim] spotted the defendant running along the shoulder of the freeway"); *see also State v. Cobb*, 22 Wn. App.

8

*State v. Slater (Samuel David Obert)*, No. 98795-5

221, 589 P.2d 297 (1978); *State v. Jefferson*, 11 Wn. App. 566, 524 P.2d 248 (1974)

(discussed in detail below).

> It is undoubted that acts of concealment by an accused are competent to go to the jury as tending to establish guilt, yet they are not to be considered as alone conclusive, or as creating a legal presumption of guilt; they are mere circumstances to be considered and weighed in connection with other proof with that caution and circumspection which their inconclusiveness when standing alone require[s].

*Hickory*, 160 U.S. at 416-17. A trial court when faced with proposed flight evidence must decide whether or not the alleged evidence amounts to flight that supports a consciousness of guilt inference. If it does amount to flight evidence that supports a consciousness of guilt inference, the judge may allow the evidence to be considered by the jury.

However, in this case we are faced with what may be the most tenuous and speculative form of alleged flight evidence: the single FTA accompanied by a motion to quash just over one month later. We hold that evidence of a single FTA accompanied by a prompt motion to quash the issued warrant is not sufficient evidence of flight and, therefore, cannot be used as evidence from which to infer consciousness of guilt on the underlying crime.

The State relies on two Court of Appeals cases for the proposition that an FTA is admissible as evidence of flight and consciousness of guilt: *Jefferson* and *Cobb*. In *Jefferson*, the defendant failed to appear on his trial date, and the court

9

*State v. Slater (Samuel David Obert)*, No. 98795-5

issued a bench warrant. 11 Wn. App. at 568. Jefferson himself testified that "he was 'nervous and was afraid and decided to leave' and that he went to California 'to find a house, find work, because [he] had no intention of showing up for this court.'" *Id*. The trial court instructed the jury that it could consider flight in determining guilt or innocence. *Id*. On appeal, Jefferson contended that it was an error to equate the FTA with flight. Relying on *Bruton*, the Court of Appeals disagreed and found that the flight was properly submitted to the jury. *Id*. at 571. It reasoned, "A decision to avoid trial, although not an impulsive reaction, is nevertheless *a circumstance which, if unexplained*, might reasonably be considered to be the act of one who is conscious of his guilt." *Id*. at 570 (emphasis added).

Similarly, in *Cobb*, the Court of Appeals again addressed the admission of an FTA that resulted in forfeiture of bail and the issuance of a bench warrant. 22 Wn. App. at 224. Cobb failed to appear at trial and was not apprehended until about one year later. *Id*. Relying on *Jefferson*, the Court of Appeals again held that the FTA for trial is admissible as circumstantial evidence of guilt. *Id*. at 224-25. The court declined to limit evidence of flight to that flight intended to avoid immediate arrest and implied that it would have weighed the explanation of the absence in determining whether it was in fact evidence of guilt if Cobb had provided one. *Id*. at 225.

10

*State v. Slater (Samuel David Obert)*, No. 98795-5

The State, and the trial court judges below, treat these factually distinguishable cases as definitive evidence that a charge of bail jumping premised on one FTA is admissible evidence of flight that can be admitted as evidence of consciousness of guilt. However, under *Jefferson* and *Cobb*, FTA evidence is not automatically admissible evidence of flight but, rather,

> "[t]he rationale which justifies the admission of evidence of 'flight' is that, when *unexplained*, it is a circumstance which indicates a reaction to a consciousness of guilt. . . . A decision to avoid trial, although not an impulsive reaction, is nevertheless a circumstance which, *if unexplained, might reasonably be considered* to be the act of one who is conscious of his guilt."

*Cobb*, 22 Wn. App. at 225 (most emphasis added) (quoting *Jefferson*, 11 Wn. App. at 570 (citing 29 AM. JUR. 2D *Evidence* § 280 (1967); 1 CHARLES E. TORCIA, WHARTON'S CRIMINAL EVIDENCE § 214, at 450 (13th ed. 1972))).

*Jefferson* and *Cobb* both contain scenarios that would likely be considered flight evidence under the *Bruton* framework. In both cases, there is a reasonable inference of flight that is more than mere speculation as both defendants missed trial, and then proceeded to remain hidden from prosecution for an extended period of time. In contrast, Slater attended all his prior court dates, had a single FTA, and just over a month later returned to court to quash the warrant. Under *Bruton,* a single FTA is speculative evidence of flight. That circumstance coupled with a prompt warrant quash negates *any* reasonable inference that the FTA was for the purpose of avoiding prosecution. Under the circumstances of the present case, the

11

*State v. Slater (Samuel David Obert)*, No. 98795-5

FTA is not admissible as flight evidence and, therefore, cannot be used for the purpose of inferring guilt. [3]

In addition, under the Fifth Circuit's four-part inference framework, first there must be an inference from the defendant's behavior to flight. Slater's appearance for all of his prior court hearings and the timely quashing of the warrant certainly negates any reasonable inference that his behavior rises to the level of flight. The defendant's behavior of missing court, without more, provides a speculative inference of flight from prosecution and does not rise to the level of flight necessary to reach the next step of this framework.

Accordingly, we choose to follow the approach of the Superior Court of Pennsylvania[4] and distinguish between a single FTA, which is not considered flight evidence, and an FTA accompanied by additional evidence of avoiding prosecution, which does amount to flight evidence. In *Commonwealth v. Babbs*, 499 A.2d 1111, 1114 (Pa. Super. Ct. 1985), the defendant appeared in court "on several occasions" but missed the trial date. However, he "did not flee or conceal himself . . . and was found shortly thereafter at his known residence." *Id*. The

---

[3] In addition, both *Jefferson* and *Cobb* predate the adoption of the rules of evidence (adopted in 1979) and, therefore, do not contain any reference to ER 404(b) or ER 403, which govern the introduction of evidence of prior misconduct. ER 404(b) and ER 403 are discussed in detail in Section I.C.

[4] The Superior Court of Pennsylvania is an intermediate appellate court for the commonwealth.

12

*State v. Slater (Samuel David Obert)*, No. 98795-5

defendant had not shown at court because of an argument with his attorney. *Id*. The

Superior Court of Pennsylvania opined, "A[n FTA] on the day set for trial does not

have the same connotation as pre-arrest flight or concealment and cannot be said

to point unerringly to consciousness of guilt." *Id*. at 1113. Further, the defendant's

circumstances had "no basis for drawing an inference that [his FTA] on the

continued trial date was attributable to a consciousness of guilt." *Id*. at 1114.

In contrast, in *Commonwealth v. Carter*, 597 A.2d 1156, 1160 (Pa. Super.

Ct. 1991), the defendant failed to appear for trial and was not apprehended for an

entire year. Upon his arrest, he also gave police a fake name. *Id*. The Superior

Court of Pennsylvania specifically distinguished the case from *Babbs* and

concluded that the evidence was sufficient to conclude that Carter "had fled,

and/or concealed his whereabouts to avoid prosecution." *Id*.  The court

distinguished the two cases, in the same way that we now distinguish the present

case from *Jefferson* and *Cobb*. In the present case the State provided evidence

that Slater missed trial call and, with no additional facts, inferred that his FTA

was flight to flee prosecution that showed consciousness of guilt. This was pure

speculation.

Bail jumping predicated on a single FTA and nothing more is not flight

evidence from which to infer consciousness of guilt on an underlying charge. A

trial court must not automatically allow this type of evidence but must first decide

13

*State v. Slater (Samuel David Obert)*, No. 98795-5

whether or not the proposed evidence amounts to a reasonable inference of flight that is more than mere speculation and supports a consciousness of guilt inference. Because the evidence here does not, the trial court judges abused their discretion when they admitted the FTA as flight evidence from which to infer consciousness of guilt.

B.     Other considerations for assessing FTA flight evidence

Not all FTAs are flight evidence and not all flight evidence infers a consciousness of guilt. There are many innocent reasons people fail to appear for court, and courts must consider these circumstances. This includes the disproportionate effect that criminalizing FTAs has on persons of lower socioeconomic classes and the legislature's shift away from the criminalization of FTAs accompanied by motions to quash.

Criminalizing FTAs, and using an FTA to infer consciousness of guilt, fails to consider a crucial factor—why people miss court. *See* Aleksandrea E. Johnson, *Decriminalizing Non-Appearance in Washington State: The Problem and Solutions for Washington's Bail Jumping Statute and Court Nonappearance*, 18 SEATTLE J. FOR SOC. JUST. 433, 446 (2020). Some of the reasons may include lack of reliable transportation: competing responsibilities, such as child care or work; disorganization; and forgetting court dates. *Id.* at 441-42.  Frequently, defendants miss court because of issues of indigency rather than a desire to disobey the legal

*State v. Slater (Samuel David Obert)*, No. 98795-5

system. *Id*. at 466. Although whether to *criminalize* an FTA is not within the purview of this court or this case, what follows from these observations is that many people miss court for reasons unrelated to consciousness of guilt. As WACDL et al. observe in their amicus brief, "The inference that an FTA shows consciousness of guilt is frequently unreasonable." Joint Amicus Curiae Br. of WACDL et al. at 2.

Further, criminalizing FTAs disproportionately impacts indigent people and people of color. *See* Johnson, *supra*, at 442 ("Research . . . suggests that people of color tend to have higher failure to appear rates."); *see* Haley R. Zettler & Robert G. Morris, *An Exploratory Assessment of Race and Gender-Specific Predictors of Failure to Appear in Court Among Defendants Released via a Pretrial Services Agency*, 40 CRIM. JUST. REV. 417, 426 (2015) ("indigence had a positive, significant impact on FTA (i.e., indigent defendants were more likely to FTA)"). In addition, Black and Latinx defendants are more likely to fail to appear than their white counterparts. *See* Johnson, *supra*, at 442 n.43 (citing Zettler & Morris, *supra*, at 419 n.38). People miss court for many reasons, not all nefarious.

The bail jumping statute provides "uncontrollable circumstances" as an affirmative defense. RCW 9A.76.170(2).[5] While this somewhat mitigates the use

---

[5] "Uncontrollable circumstance[]" is defined as "an act of nature, such as a flood, earthquake, or fire, or a medical condition that requires immediate hospitalization or treatment, or an act of a human being such as an automobile accident or threats of death, forcible sexual attack, or

15

*State v. Slater (Samuel David Obert)*, No. 98795-5

of a bail jumping charge predicated on an FTA as evidence of consciousness of guilt, the defense does not consider the most common reasons why defendants, who are often indigent, would miss court. While the act of missing court itself may amount to a violation of the bail jumping statute, it does not, without more, amount to a reasonable inference of flight or evading prosecution required to show consciousness of guilt. Using an FTA to infer consciousness of guilt negatively interprets homelessness, an inability to stay organized, transportation issues, the choice between coming to court or keeping a job or caring for a child, and other real-life reasons why one may be unable to attend court on a particular date. In no other context would these circumstances be construed as a rational inference of guilt.

The legislature has recognized that a defendant can miss a court date because of unfortunate, but not "uncontrollable," circumstances. *See* LAWS OF 2020, ch. 19 (effective June 11, 2020). The recent amendments to the bail jumping statute, though not applicable to Slater's bail jumping charge, require under one prong proof of the additional element that within 30 days of the issuance of a warrant for the FTA, the defendant "does not make a motion with the court to quash the warrant, and if a motion is made under this subsection, he or she does not appear

---

substantial bodily injury in the immediate future for which there is no time for a complaint to the authorities and no time or opportunity to resort to the courts." RCW 9A.76.010(4).

16

*State v. Slater (Samuel David Obert)*, No. 98795-5

before the court with respect to the motion." RCW 9A.76.170(1)(b)(ii)(A). This change provides more persuasive evidence that an FTA is frequently not indicative of consciousness of guilt.

### C. Motion to sever and cross admissibility

The judges in this case concluded that the facts surrounding Slater's charge of bail jumping are flight evidence admissible to prove consciousness of guilt as to the underlying offense. Because we hold that the FTA in this case is not evidence of flight, we now examine the motion to sever in light of that change in circumstance.

A defendant "seeking severance ha[s] the burden of demonstrating that a trial involving [all] counts would be so manifestly prejudicial as to outweigh the concern for judicial economy." *State v. Bythrow,* 114 Wn.2d 713, 718, 790 P.2d 154 (1990). Joinder of offenses carries the potential for prejudice if (1) the defendant may have to present separate, possibly conflicting, defenses, (2) the jury may infer guilt on one charge from evidence of another charge, or (3) the cumulative evidence may lead to a guilty verdict on all charges when, if considered separately, the evidence would not support every charge. *Id.* at 718. "Prejudice may result from joinder if the defendant is embarrassed in the presentation of separate defenses, or if use of a single trial invites the jury to cumulate evidence to find guilt or infer a criminal disposition." *Russell*, 125 Wn.2d at 62-63.

17

*State v. Slater (Samuel David Obert)*, No. 98795-5

> In determining whether the potential for prejudice requires severance, a trial court must consider (1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial.

*Id*. at 63. Prejudice must also be weighed against the need for judicial economy. *Id*.

Slater challenges only the fourth factor. This factor considers, under an ER 404(b) analysis, whether evidence of each charge would be cross admissible in the separate trials as proof of the other if severance were granted. *Id*. at 66.

Under ER 404(b), "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, ER 404(b) permits evidence of prior bad acts for other, limited purposes. ER 404(b) is read in conjunction with ER 403 which allows a trial court to exercise its discretion to exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." *See also State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009).

> Prior to the admission of misconduct evidence, the court must (1) find by a preponderance of the evidence the misconduct actually occurred, (2) identify the purpose of admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value against the prejudicial effect of the evidence.

*Id*.

18

*State v. Slater (Samuel David Obert)*, No. 98795-5

In the pretrial ruling, the judge went through all four severance factors one by one on the record. *See* VRP (Nov. 9, 2018) at 10-13. However, with the cross admissibility factor, the judge *did not* engage in an ER 404(b) and ER 403 analysis to determine whether the charges were cross admissible. The judge indicated that the case law (*Jefferson* and *Cobb*) states that bail jumping is cross admissible for evidence of guilt. The judge then looked to prejudice and described a case in the "ER 404(b) arena" that also looked at the prejudice of propensity evidence. *Id*. at 12. After acknowledging the prejudice in the present case, the judge concluded "prejudice is going to exist essentially whether it's severed or not" because the charges are likely cross admissible. *Id*. at 13. This discussion of prejudice appears to be in relation to the prejudice analysis contained within the test for a motion to sever, but not the additional prejudice analysis under the ER 404(b) and ER 403 test for misconduct evidence. The judge did not determine whether the prejudice of the bail jumping charge predicated on the FTA in this specific case substantially outweighed the probative value of the charge as required under ER 404(b) and ER 403. Instead, the judge concluded that the charges likely were cross admissible without that analysis, and then analyzed the prejudice of severance assuming the charges were cross admissible.

At trial, Slater had a different judge when he renewed his motion to sever. He argued that the bail jumping charge was inadmissible under ER 404(b) because

19

of the "strong prejudice" caused by not severing the charges. 1 VRP (Nov. 14, 2018) at 29. The judge responded, "Well, I think the test is not prejudice. It's unfair prejudice. And in balancing this, I do not believe that there is—that the danger of unfair prejudice outweighs the probative value. So I will—I don't find any reason to disturb Judge Farris's ruling." *Id.* at 29-30. In doing so, the trial judge engaged in the ER 404(b) and ER 403 balancing of the probative value and the alleged prejudice of the bail jumping charge that was missing from the pretrial judge's determination on cross admissibility. However, even assuming that the trial judge's weighing of prejudice and probative value corrected the pretrial judge's error, both judges were examining the proposed evidence under the mistaken conclusion that the FTA and bail jumping charge amounted to flight evidence with the purpose of inferring consciousness of guilt.

However, as we conclude above, the FTA in the present case does not amount to flight evidence and cannot be used for the purpose of inferring guilt. Under the ER 404(b) test, prior to admission of misconduct evidence, the court must identify the purpose for which the evidence is presented. In the pretrial motions the purpose was to use the FTA as flight evidence from which to infer consciousness of guilt. However, because we hold that purpose is not applicable to the facts of this case, any remaining purpose for the admission of misconduct evidence would be (as was stated during closing arguments) to show that Slater is

*State v. Slater (Samuel David Obert)*, No. 98795-5

the type of person who violates court orders, among any other improper and negative connotations of missing a required court date. This propensity evidence is explicitly prohibited under ER 404(b). Without a permissible purpose for the admission of the misconduct evidence, it would not be admissible. Therefore, under ER 404(b) and ER 403 the evidence of the FTA would not be cross admissible to prove the DVNCO charge, and therefore, the fourth factor of the severance test is not met.

A lack of cross admissibility does not automatically mean that the charges must be severed. *See State v. Bluford*, 188 Wn.2d 298, 315, 393 P.3d 1219 (2017). The defendant must still show that the prejudicial effect of trying the charges together outweighs the need for judicial economy. *Id*.

In the present case, we hold that the prejudice to the defendant does outweigh the need for judicial economy. The pretrial judge acknowledged in this case that both of the charges involve violations of court orders, and therefore there is higher than normal prejudice in trying these two charges together. But it is important to note that is the only similarity between the two charges as they are not connected or related in any way. As to judicial economy, while two trials are certainly more time and effort than one trial, the witnesses as to each charge in this case were different. Witnesses would not be tasked with showing up to both trials. Further, as we held in *Bluford*, "because the evidence was not cross admissible, the interest in

21

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

judicial economy loses much of its force because the State would not have been required (or allowed) to call all of its witnesses in each separate trial." *Id*. at 315-16; *see also State v. Ramirez*, 46 Wn. App. 223, 226, 730 P.2d 98 (1986) (abuse of discretion when the trial court denied the motion to sever when proof of each crime was inadmissible to prove the other crime). Here, the need for judicial economy is outweighed by the prejudice to the defendant because the FTA is not admissible as to the DVNCO charge, the witnesses for the charges do not overlap, and trying the charges together presents a risk of improper propensity inferences. Accordingly, the pretrial and the trial judges abused their discretion when they allowed the FTA in as flight evidence to infer consciousness of guilt and denied the motions to sever the charges. We reverse the convictions and remand for separate trials on the two charges.

  II. Prosecutorial misconduct during closing argument

We need not decide whether the prosecutor's comments were ill intentioned and amounted to prosecutorial misconduct because these comments were made in light of the trial court's rulings and we have already held reversal is required based on these rulings. However, we address the prosecutor's conduct to highlight the problematic commentary of the prosecutor caused by the admission of the FTA to infer consciousness of guilt evidence.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Prosecutors have "wide latitude to argue reasonable inferences from the evidence" to the jury during closing argument. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012) (plurality opinion). However, the prosecutor must not refer to evidence that has not been admitted and must not express a personal opinion on the guilt of the accused. *Id*. at 705-07. This court considers the prosecutor's arguments in the context of the case, the arguments as a whole, the evidence presented, and the jury instructions. *State v. Magers*, 164 Wn.2d 174, 192, 189 P.3d 126 (2008) (plurality opinion).

"In order to establish prosecutorial misconduct, a defendant must show 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" *Id*. at 191 (quoting *State v. Hughes,* 118 Wn. App. 713, 727, 77 P.3d 681 (2003)). If the defendant objected to the offending statement at trial, he must establish that the "misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). However, "failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *Russell*, 125 Wn.2d at 86. "When evaluating whether misconduct is flagrant and ill intentioned, we 'focus less on whether the prosecutor's misconduct was flagrant or ill intentioned

23

and more on whether the resulting prejudice could have been cured.'" *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 165-66, 410 P.3d 1142 (2018) (quoting *Emery*, 174 Wn.2d at 762).

Slater alleges that the prosecutor committed misconduct during closing argument and rebuttal. Slater argues that the prosecutor's comments in this case fall into three general areas. First, "instructing the jury that Mr. Slater was guilty." Suppl. Br. of Pet'r at 16. This included making comments such as "If he didn't do it, why didn't he show up for trial call a year ago? Why didn't he show? . . . The day that we find out whether this case is going out or not, he's gone. If he didn't do it, why didn't he show?" 2 VRP (Nov. 15, 2018) at 215-16; *see also id*. at 219 ("He didn't show, because he got cold feet. He didn't show . . . because he didn't want to be there."), 220 ("If he didn't do it, why didn't he show? . . . He just didn't show on the day that mattered, because he's guilty."), 231 ("He didn't show because he didn't want to face the facts."), 236 ("He didn't show because he was there on August 6th and that's why he's guilty and I'm asking you to find him so on both."). Slater objected only to the "cold feet" comment, to which the judge stated, "I'll just note it's argument." *Id*. at 219.

Second, Slater contends the prosecutor "argu[ed] an impermissible inference from the evidence." Suppl. Br. of Pet'r at 16. This included an impermissible propensity argument, that Slater is one to sign court documents and not adhere to

24

*State v. Slater (Samuel David Obert)*, No. 98795-5

them. *See* 2 VRP (Nov. 15, 2018) at 222 ("[Y]ou don't sign documents if you're not going to adhere to them. And if you do, you do so at your own peril whether it be a no-contact order, an omnibus order or your conditions of release. This man is guilty of both crimes.").

And third, Slater argues the prosecutor was "appealing to the jury's passion to secure a conviction based on emotion, while also skirting the areas of burden-shifting and denigrating defense counsel's argument." Suppl. Br. of Pet'r at 16. This included comments such as "There's no evidence that he mistook his date. There's no evidence that the court was notified he wasn't going to be able to make it." 2 VRP (Nov. 15, 2018) at 220; *see also id.* at 222 ("He's banking on the fact nobody else saw it and he's banking on the fact you're not going to take into consideration he didn't show for the second time. Don't give it to him."), 231 ("Man, if my case was that weak, I think I'd show up for trial call. I think I'd be there if there were all those contradictions. I think I'd get this thing out of the way and move on with my life. I'd show up. He didn't."), 235 ("If this case was as weak as defense counsel says it is, I would have showed up on September 8th.").

In *Glasmann*, this court held that the prosecutor committed misconduct when "[d]uring closing argument, the prosecuting attorney made an electronic presentation to the jury that graphically displayed his personal opinion that Glasmann was 'guilty, guilty, guilty' of the crimes charged by the State." 175

25

Wn.2d at 699. The court further held that the repeated use of this imagery throughout closing "was so pervasive that it could not have been cured by an instruction." *Id*. at 707. The court found the prosecutor's misconduct was flagrant and ill intentioned, and that the cumulative effect of the improper comments and imagery did meet the high bar of being so flagrant and ill intentioned that it required reversal. *Id*.

The Court of Appeals, in comparing *Glasmann* with the present case, concluded that the prosecutor's comments were not improper because the comments on Slater's guilt "were offered in the context of the prosecutor's discussion of flight and consciousness of guilt." *Slater*, No. 79335-7-I, slip op. at 12-13. Further, it reasoned that "a timely objection would have allowed for an instruction that would have cured any prejudice." *Id*. at 13.

The Court of Appeals is incorrect. Slater correctly contends, "The misconduct here stemmed directly from the court's errors in admitting Mr. Slater's missed court date as evidence of consciousness of guilt and denying the severance motion." Suppl. Br. of Pet'r at 16. The court's erroneous ruling gave the prosecutor permission to repeatedly emphasize the FTA and to improperly equate the FTA with consciousness of guilt. The repeated focus on Slater's guilt and propensity to violate court orders highlighted the exact prejudice that Slater argued in his motion to sever. This is akin to the inflammatory comments presented in *Glasmann*.

26

*State v. Slater (Samuel David Obert)*, No. 98795-5

Similarly, it is unlikely that an instruction to the jury would have cured this line of argument because when Slater did object, the judge stated, "I'll just note it's argument." 2 VRP (Nov. 15, 2018) at 219. The trial judge's comment did not and could not cure the impropriety of the prosecutor's argument.

CONCLUSION

We reverse the Court of Appeals and hold that the FTA was not flight evidence and, therefore, should not have been admitted for the purpose of inferring consciousness of guilt. Accordingly, the trial court erred when it denied the motion to sever as the charges would not be cross admissible under an ER 404(b) and ER 403 analysis, and the prejudice to Slater outweighed any judicial economy. Further, failing to sever the charges allowed the prosecutor to make otherwise improper comments regarding the FTA as consciousness of guilt during closing arguments. We reverse and remand for separate trials.

*State v. Slater (Samuel David Obert)*, No. 98795-5

_____
Whitener, J.

WE CONCUR.

_____     _____
González, C.J.                        Stephens, J.

_____     _____
Johnson, J.                         Gordon McCloud, J.

_____     _____
Madsen, J.                         Yu, J.

_____     _____
Owens, J.                          Montoya-Lewis, J.