**FILED**
**AUGUST 30, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37842-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JUSTIN WAYNE CROSON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Justin Croson appeals his convictions for

possession of stolen motor vehicle and possession of a motor vehicle theft tool. He

argues that introduction of inadmissible hearsay denied him a fair trial. We decline to

review this claim of error because it was not preserved with an objection. He also argues

the prosecutor committed misconduct when he violated an in limine ruling. We disagree.

The prosecutor's argument did not violate the in limine ruling, and it was a proper

argument based on reasonable inferences from the evidence. We affirm.

OVERVIEW OF FACTS

When David Kenna drove by an apartment complex where he had earlier parked

his 1995 Dodge Ram, he saw the truck in its parking spot but with exhaust coming out of

it. He then noticed the truck quickly pull forward and exit the apartment complex.

As Mr. Kenna followed his truck, he called 911 and reported his truck had been stolen and he was following it. Miles later, the driver pulled over and walked away. About this time, Deputy Thomas Donahue arrived. Mr. Kenna pointed out the driver to the deputy and exclaimed, "There's the man who stole my truck." Report of Proceedings (RP) (Sept. 23, 2020) at 189. The deputy identified the driver as Justin Croson and, in a search incident to arrest, found methamphetamine and shaved keys on him. The deputy's report noted that when Mr. Kenna first saw his truck, it was moving, not parked.

PROCEDURE

The State charged Mr. Croson with possession of a stolen motor vehicle, making or possessing a motor vehicle theft tool, and unlawful possession of a controlled substance.

*Motions in limine*

The court heard motions in limine the week before trial.[1] As relayed by the court, Mr. Croson's motion in limine proposed excluding "any evidence or testimony that a witness believed a crime had occurred or that the defendant had committed a crime." RP (Sept. 17, 2020) at 27.

---

[1] The motion pleadings are not part of the record on appeal.

2

The State objected to the motion, noting that the motion would exclude evidence or testimony that was "not the same as saying the defendant is guilty of the instant crime." RP (Sept. 17, 2020) at 28. It argued,

> A lay witness is allowed to state facts and observations, and inasmuch as Mr. Kenna can state he saw a vehicle, he didn't give anyone permission to take it, someone stole my truck, I think that is—I would object for that. I think that's distinguishable from saying the defendant is guilty of the crime of possession of a stolen motor vehicle.

RP (Sept. 17, 2020) at 28. Mr. Croson responded that Mr. Kenna should not "be able to testify that that guy stole my truck so I followed him, because the allegation here is not theft of a motor vehicle. So for him to say that, I think it is very prejudicial and it's not what we're going to trial for." RP (Sept. 17, 2020) at 28-29.

The court noted that the motion involved "corralling witnesses" and suggested the State have a

> conversation with your lay witness, he can certainly identify that my truck was stolen, and he can certainly indicate I saw an individual in my truck who didn't have permission to be in it from me, but I don't think he gets to make that leap of the person I saw in my truck I know stole my truck.

RP (Sept. 17, 2020) at 29.

The State expressed concern that the motion, as written, was broader than necessary as it would prevent any mention that the truck was stolen. The court thus ruled:

I'm going to deny with regards to the witness knowing that a crime had occurred because he certainly does know that a crime had occurred, but he doesn't necessarily have the ability to say that the defendant committed the crime *unless he watched him do it, and I don't believe that's what the situation is based upon the charges*.

So this is—be careful as to how you ask him the questions, because the witness certainly knows that he didn't give anybody permission to take his truck and his truck was gone. That's the crime, a crime, not the one the defendant is charged with. So the way this is written, the witness certainly has a basis to believe a crime has been committed, yes, so I'm not limiting his testimony with regards to that.

What I don't believe, *based upon what you've told me*, is that this witness, the owner of the truck, knows who stole his truck. And then from that aspect, because of the nature of the crime of possession of stolen property, he certainly doesn't know whether the defendant knew he was in a stolen vehicle. So I will grant from that aspect, with regards to pinning it to the defendant in particular, *unless he has that personal knowledge, and you're indicating to me that he does not. . . .*

RP (Sept. 17, 2020) at 31 (emphasis added).

<u>*Trial*</u>

At trial, the State called witnesses including Deputy Donahue and Mr. Kenna.

*Deputy Donahue's testimony*

On direct examination, Deputy Donahue described the dispatch report that began his involvement in the case:

[Deputy Donahue:] Well, we were advised by our dispatch that a gentleman had called in and reported that he was following his vehicle, and that no one else should have it, and, therefore, it was stolen.
It was advised to us that the vehicle was —
[Defense counsel:] Objection, Your Honor.

4

THE COURT:  I would sustain it.

[The State:]  Just go ahead and tell us what you were doing then.  You were responding to a call for service.

[Deputy Donahue:]  Yes.

RP (Sept. 22, 2020) at 137-38.  Deputy Donahue proceeded to describe his actions and observations.  The State asked the deputy about his arrival on the scene:

[The State:]  Did the person who called in who instigated this call for service, without saying what he said, did he say anything to you when you arrived in the area?

[Deputy Donahue:]  Yes.  He says immediately as we arrive —

[Defense counsel]:  Objection, Your Honor.

[The State:]  Without going into the actual content.

[Deputy Donahue:]  Sure.

[The State:]  He did call out to you; is that correct?

[Deputy Donahue:]  Yes, immediately.

RP (Sept. 22, 2020) at 139.  Deputy Donahue pointed out Mr. Croson in the courtroom as the man Mr. Kenna identified as driving his truck.

On cross-examination, defense counsel asked if Mr. Kenna had made any gestures when Deputy Donahue arrived on the scene.  After Deputy Donahue answered that Mr. Kenna made a pointing gesture, defense counsel asked if Deputy Donahue remembered telling defense counsel in an earlier interview that Mr. Kenna never actually pointed at Mr. Croson.  Deputy Donahue could not recall what he said in the interview.

On redirect, the State asked again about Mr. Kenna calling out when Deputy Donahue arrived on scene:

5

[The State:] . . . Did Mr. Kenna yell anything to you when you got on scene?

[Deputy Donahue:] Yes.

[The State:] What did he yell to you?

[Deputy Donahue:] "That man just stole my truck."

[The State:] Was there any doubt in your mind at the time that when Mr. Kenna conveyed that to you, he was referring to Mr. Croson?

[Deputy Donahue:] None whatsoever.

RP (Sept. 22, 2020) at 166-67. On recross-examination, defense counsel pointed out a discrepancy between the description of the suspect from law enforcement's computer aided dispatch report and Mr. Croson's physical appearance in court. On second redirect, the State asked Deputy Donahue about the accuracy of the computer aided dispatch report:

[The State:] Are [the reports] always a hundred percent correct what they convey to you from a reporting party?

[Deputy Donahue:] Absolutely not.

[The State:] Did Mr. Kenna at the scene say that Mr. Croson was the person who took his car?

[Defense Counsel]: Objection, Your Honor. Hearsay.

THE COURT: I'm going to overrule it if he can answer it the way it's asked.

[Deputy Donahue]: Yes.

RP (Sept. 22, 2020) at 170.

*David Kenna's testimony*

Mr. Kenna has several vehicles and keeps most of them in his shop. However, he stores his 1995 Dodge Ram pickup in a designated parking spot at an apartment complex

6

where a friend lives. He testified he was heading to breakfast one morning and he noticed

the truck parked in its spot but steam was coming out of it. He then saw the car pull

forward quickly and out of the complex. He testified he followed it and, after several

miles, the driver stopped, got out of the pickup, and started walking away.

> [The State:] . . . Do the police eventually arrive on scene?
> [Mr. Kenna:] Yes. . . . I was out of my vehicle and pointed at the man walking away from my vehicle. There's the man who stole my truck, and they stopped right there and arrest [sic].
> [The State:] So did they detain the man that you pointed out?
> [Mr. Kenna:] Yes, they did.
> [The State:] And was the man who they detained the person who was driving your truck?
> [Mr. Kenna:] Yes.

RP (Sept. 23, 2020) at 188-89. Mr. Kenna pointed out Mr. Croson in the courtroom as

the man who had been driving the truck.

*Closing argument*

In closing, the State argued that both Mr. Kenna and Deputy Donahue identified

Mr. Croson as the person who had been driving Mr. Kenna's truck:

> Mr. Croson was identified by Mr. Kenna in court. He was identified on the scene as the person who had stolen his vehicle and the person that had driven it and gotten out. Deputy Donahue testified that he identified Mr. Croson at the scene. . . . He, also, identified him here in court and recognized him directly.

7

RP (Sept. 23, 2020) at 245. The State discussed the knowledge element of possession of

a stolen vehicle:

> How did Mr. Croson know that Mr. Kenna's truck was stolen?
> Because he stole it. There may be no better way to know that a vehicle is
> stolen than to be the person who stole it. That may—I don't want to foot
> stomp too much on that. It may seem obvious, but just showing how each
> of these elements have been met.
> . . . .
> [Mr.] Kenna saw Mr. Croson steal his truck. He [identified] him in
> the testimony, and he, also, testified that [Mr.] Croson was the person
> arrested by [Deputy] Donahue. All of these things connect.

RP (Sept. 23, 2020) at 245. The State similarly discussed the intent element of possession

of a motor vehicle theft tool:

> The circumstances of his possession of those keys clearly an intent to use or
> employ the tool in the commission of a motor vehicle theft . . . .
> How do we know this? Because he did, in fact, use them to steal
> the vehicle. Mr. Kenna came upon the vehicle. It was running. He was in
> it. . . .
> . . . .
> Ladies and gentlemen, it doesn't get much more certain than the
> owner of a vehicle that is being stolen catching the thief red-handed in the
> act, following him until the police arrive, watching them arrest the correct
> person and then identifying that person in court.

RP (Sept. 23, 2020) at 247-48.

8

No. 37842-0-III
*State v. Croson*

The jury found Mr. Croson guilty on all counts, and the trial court sentenced him. Mr. Croson timely appealed.[2]

## ANALYSIS

### A.    FAIR TRIAL

Mr. Croson contends the State denied him a fair trial by eliciting hearsay evidence from Deputy Donahue in violation of a motion in limine. We disagree.

A defendant has a fundamental right to a fair trial. U.S. CONST. amends. VI, XIV; WASH. CONST. art. I, § 22. Where inadmissible hearsay is used to show propensity for the type of crime charged, the State can impermissibly but "adroitly draw[ a] picture of the defendant's criminal proclivities . . . ." *State v. Suleski*, 67 Wn.2d 45, 51, 406 P.2d 613 (1965). "'The question in all cases, is not whether the court, if trying the case, would disregard the obnoxious evidence, but whether the court is *assured* that the jury has done so.'" *Id.* (quoting *State v. Meader*, 54 Vt. 126, 132 (1881)).

At trial, Mr. Croson cross-examined Deputy Donahue about whether he arrested the correct person. This caused the State on redirect to elicit testimony from the deputy

---

[2] While this appeal was pending, our Supreme Court decided *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). There, the court held that Washington's possession of a controlled substance statute was unconstitutional because it criminalized unknowing possession. We remanded for vacation of the possession conviction and resentencing. No issues arise from resentencing.

9

that Mr. Kenna pointed to the defendant and exclaimed, "'That man just stole my truck.'" RP (Sept. 22, 2020) at 166. Based on Mr. Kenna's identification of Mr. Croson, the deputy testified that he was certain he arrested the correct person.

Mr. Croson first argues this testimony was inadmissible hearsay. We decline to review this claim of error. We note that Mr. Croson did not object to the deputy's testimony on this point. In general, we do not review claims of error raised for the first time on review. RAP 2.5(a). One exception to this rule involves manifest errors affecting a constitutional right. RAP 2.5(a)(3).

Here, the error raised is neither constitutional nor manifest. It is evident from the questions asked by both parties that the out-of-court statement repeated by the deputy was not elicited to prove the truth of the matter asserted—that Mr. Croson stole the truck—it was elicited to prove the deputy arrested the correct person.

An out-of-court statement is not hearsay if the declarant testifies at trial and is subject to cross-examination and the statement is "one of identification of a person made after perceiving the person." ER 801(d)(1)(iii). Here, Mr. Kenna testified at trial and the statement likely was one of identification after Mr. Kenna perceived Mr. Croson get out of the truck and walk away. We conclude the claimed evidentiary error was not manifest and decline to review it.

10

Mr. Croson next argues the deputy's testimony violated the trial court's in limine ruling. Again, we decline to review this claim of error because Mr. Croson failed to preserve his right of review with an objection.

"When an evidentiary ruling is pursuant to a motion in limine, only *the losing party* is deemed to have a standing objection and need not specifically object at trial to preserve the issue for appeal." *State v. Finch*, 137 Wn.2d 792, 819-20, 975 P.2d 967 (1999) (citing *State v. Powell*, 126 Wn.2d 244, 256, 893 P.2d 615 (1995)). The sound policy reasons behind this rule were thoroughly explained in *State v. Sullivan*, 69 Wn. App. 167, 172, 847 P.2d 953 (1993):

> It is appropriate then that, where the evidence has been admitted notwithstanding the trial court's prior exclusionary ruling, the complaining party be required to object in order to give the trial court the opportunity of curing any potential prejudice. Otherwise, we would have a situation fraught with a potential for serious abuse. A party so situated could simply lie back, not allowing the trial court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal.

Here, the in limine ruling precluded Mr. Kenna from testifying that Mr. Croson stole his truck. Thus, Mr. Croson won the in limine ruling and was thus required to object to its purported violation. He failed to object to the deputy's secondhand testimony, so the purported error was not preserved for review.

11

B.      PROSECUTORIAL MISCONDUCT

Mr. Croson next argues that the prosecutor committed reversible misconduct by

violating the trial court's in limine ruling by telling the jury four times that Mr. Croson

stole Mr. Kenna's truck.  We disagree.

"'In order to establish prosecutorial misconduct, a defendant must show that the

prosecutor's conduct was both improper and prejudicial in the context of the entire record

and the circumstances at trial.'"  *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873

(2021) (internal quotation marks omitted) (quoting *State v. Magers*, 164 Wn.2d 174, 191,

189 P.3d 126 (2008) (plurality opinion)).  "However, 'failure to object to an improper

remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned

that it causes an enduring and resulting prejudice that could not have been neutralized by

an admonition to the jury.'"  *Id.* (quoting *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d

747 (1994)).

Here, the prosecutor's remarks did not violate the trial court's in limine ruling.

The ruling prohibited Mr. Kenna from saying that Mr. Croson stole his truck, "unless

he has that personal knowledge, and [counsel is] indicating to me that he does not."

RP (Sept. 17, 2020) at 31.  Prior to trial, the parties' arguments caused the court to believe

Mr. Kenna only saw his truck being driven out of the apartment complex and onto the

12

road. But during trial, Mr. Kenna testified that he saw Mr. Croson drive his truck from its designated spot.

Moreover, "[p]rosecutors have 'wide latitude to argue reasonable inferences from the evidence' to the jury during closing argument." *Slater*, 197 Wn.2d at 680 (quoting *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012) (plurality opinion)). Here, a trier of fact could reasonably infer that Mr. Croson stole Mr. Kenna's truck because it was in its designated parking spot when Mr. Croson drove it from that spot and onto the road.

Moreover, the argument directly related to an element of the State's proof. The State charged Mr. Croson with unlawful possession of a stolen motor vehicle. The element's instruction for that offense required the State to prove Mr. Croson knew the vehicle was stolen. The prosecutor used the reasonable inference that Mr. Croson stole Mr. Kenna's truck to prove Mr. Croson knew it was stolen.

We conclude the prosecutor neither violated the trial court's in limine ruling nor committed misconduct during closing.

No. 37842-0-III
*State v. Croson*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____        _____
Pennell, J.                                                    Fearing, J.

14